STATE OF TENNESSEE *v.* McMINNVILLE & MANCHESTER RAILROAD COMPANY *et al.*

1. APPEAL. *Consent decree.* No appeal lies from a consent decree.

2. RAILROAD RECEIVER. *Power to lease.* A statutory receiver of a delinquent railroad has no power to lease the road.

3. RATIFICATION. *Void lease.* A payment of rents by the lessees, under a void lease, to an officer of the State, and the reception of such rents by such officer, would be no ratification of the void lease. The Legislature alone could ratify such void lease.

4. LEASE. *Void. Improvements.* There can be no recovery for improvements made upon the road by the lessees under such void lease.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. McHENRY, Sp. Ch.

24—VOL. 6.

W. F. COOPER, E. H. EWING and W. B. REESE for complainant.

JOHN H. SAVAGE and J. P. HELMS for defendants.

J. M. GAUT, Sp. J., delivered the opinion of the court.

In the matter of Huggins and Price, stockholders and lessees of the McMinnville & Manchester Railroad.

Under the internal improvement laws of the State of Tennessee, the State had issued its coupon bonds to the McMinnville & Manchester Railroad Company, and the company having made default in the payment of interest and sinking fund, the road was placed in the hands of a receiver appointed by the Governor, under the provisions of the statutes. Subsequently, the company having continued in default, this bill was filed against said company and the ten other delinquent railroads, their stockholders and others, to have the State's interest in said roads ascertained and declared, and to sell that interest, or, with the consent of the companies to foreclose the State's statutory lien by a sale of the roads themselves. Defendants, Huggins and Price, by petition, had themselves made defendants by name, and on the 2d of March, 1871, filed an answer, which they pray may be taken as a cross-bill, and into which they incorporated a demurrer. They state in the answer, that prior to the 19th of January, 1869, the railroad company had failed to pay the interest on the State bonds issued to it, and that under the provisions of the internal improvement laws,

the road had been placed in the hands of D. E. Davenport, a receiver appointed by the Governor; that said Davenport, upon consultation with, and consent of the Governor, Wm. G. Brownlow, had on the 19th day of January, 1869, leased the road to them, at an annual rental of $15,000 for three years, which by a subsequent contract, made July 15, 1869, was extended to five years; that under this lease, they went into possession and so remained until November 29, 1869, when a bill was filed in the chancery court at Winchester, in the name of the railroad company and P. Marbury, its president and receiver, and under an injunction thereby obtained they were wrongfully dispossessed; that under a dissolution of the injunction they were restored, but were again dispossessed on the 23d of September, 1870, by an injunction granted under a pretended supplemental bill; that that case had been tried by the chancellor and was then pending in the supreme court. The further recitals in regard to that litigation it is not necessary to notice.

The respondents state that they are stockholders in said company as well as lessees of the road. They state that while they remained in possesion they paid rent to the State at the rate of $15,000 per annum, and that the State, by receiving said rent, ratified and confirmed the contract of lease. They insist that their right to the possession and control of the road for the time that their lease has to run, is superior to the claim of all other persons and especially the State of Tennessee, which has received their money and thereby ratified and confirmed the contract of the Governor

and receiver. They state further, that they have made valuable and permanent improvements on the road, and that they are entitled to pay for them, whether restored to possession of·the road or not.

The demurrer, as incorporated in the answer, assigns a number of causes, some of which go to the jurisdiction of the court, and the others set up the defense, that the State has no right to foreclose its statutory lien by a sale of the property, until the maturity of the bonds. The answer closes with a. prayer that respondents' rights be respected and protected. The company made an agreed case with the State, which was reduced to writing and filed March 10, 1871. Among other questions, that of the jurisdiction of the court over the subject-matter, is reserved therein.

On the 7th day of April, 1871, the cause was heard as to the · McMinnville & Manchester · Railroad upon the bill, etc., and upon "the agreed case heretofore entered into between Messrs. E. H. Ewing, W. F. Cooper and W. B. Reese, solicitors upon the part of the State, and Messrs. A. S. Colyar and F. M. Smith, solicitors for the railroad company, president, directors and part of the stockholders, and upon the order *pro confesso* as to all other parties who have not entered their appearance, and upon the further agreement of the solicitors for the complainant and · defendants, as appears in the latter part of this decree, when it appeared to the court," etc. After determining the indebtedness of the company to the State and declaring the State's lien on the property, it proceeds: " The

defendants' solicitors insist that as a matter of law, the complainant cannot force the sale of the road for the payment of the bonds, or the decreed interest, until the maturity of the bonds, but it is agreed by the solicitors for the complainant and defendants, that it is to the interest both of complainant and defendants that the road should be sold, and ·the following agreement is hereby entered into between the solicitors aforesaid, to-wit." Then is recited an agreement that the court, upon report of the clerk and master, shall fix a *minimum* price upon the property ·and franchises of the company, not to be less than $300,000 in State bonds; that the company shall have the exclusive right for sixty days to purchase at that price; that in case the company fails to do so, then, to use the language of the decree, "it is agreed and hereby, with consent of parties to the case, ordered, adjudged and decreed, that B. J. Hill, W. S. Huggins and G. M. Stewart be, and they are hereby authorized, as commissioners. for so many of the stockholders of said company as may wish to take benefit thereunder, and consent to the same, including themselves, to purchase said road and property at the *minimum* fixed as aforesaid, within thirty days after the failure of the company to purchase. Upon the failure of the company or commissioners aforesaid for the stockholders, to purchase within ninety days, as aforesaid, then it is agreed that the commissioners may sell the same to the highest bidder, as contemplated by the act of December 21, 1870, upon the following conditions," etc. Then follow stipulations requiring the purchaser to

operate the road. The decree proceeds: "It is there-fore ordered, adjudged and decreed by the court, that the aforesaid agreement be carried out and executed by the commissioners of the State, and that said road be sold upon the conditions and restrictions agreed upon." * * * "And it further appearing that W. S. Huggins and James Price, claiming as lessees of said road, have been made parties to the bill and have answered the same, setting up their claim against said company and the State, and, whereas, it has been agreed by said Huggins and Price to refer all matters in dispute, by suits commenced or otherwise, in regard to said lease and the rights arising under it, to the arbitrament and award of one person to be chosen by each party, and a third person to be chosen as umpire in case of disagreement of the two, said umpire to be selected by the two referees, and that an award to be made by such referees shall determine and award whether Huggins and Price are indebted to the rail-road company, or whether the company is indebted to them, and how much in either case, and that such award shall be binding upon the company and said Huggins and Price. Now it is agreed between the counsel of the State and the counsel of said Huggins and Price, John H. Savage, Esq., that the award so made shall be binding upon the State and upon the fund to be obtained by the sale of said road, if the State is liable for any amount to said Huggins and Price on account of said lease, but the question of law as to the liability of the State to said Huggins and Price, or their right to any part of said fund,

in consequence of any lease made to them, is expressly reserved. It is therefore ordered, adjudged and decreed, that the amount aforesaid to be reported by referees be taken as the amount of the claim of said Huggins and Price, if any, and the question of law aforesaid is expressly .reserved for the future adjudication of this court."

We think the mere recital of this decree shows. that, upon its face, it is a consent decree, in which the defendants, Huggins and Price, as stockholders, assent to the sale of the road. The only reservation is of their rights as lessees. And even as lessees they assent .to the sale, with the understanding, however, that if the court should decide that as against the State they had a right to the possession and enjoyment of the property till the expiration of their lease, and consequently the right to resist the sale, this. right, though not to be awarded them specifically, was. to be compensated for out of the proceeds of the sale. As to their alleged rights as stockholders, there was. no reservation whatever.

It is insisted, however, that these defendants consented to the sale only on condition that the *minimum* price should be fixed at $250,000. As evidence of this, we are referred to a paper copied into the transcript. This paper does not purport to be a paper in the cause, is not marked filed, and is not referred to in any of the decrees. But if we are permitted to look to it, it shows an agreement to which the State is not a party. It is dated April 6th, 1871, and purports only to be an agreement between B. J. Hill,

president and receiver, and Huggins and Price. It affords no evidence as to what agreement may have been made by their solicitors with the State upon the following day. The decree is, we think, a consent decree, which the appellants have taken no steps to set aside. As no appeal lies from a consent decree, the appeal as to it must be dismissed.

On the 11th of July, 1871, the questions of law reserved were heard, no steps having, in the mean time, been taken upon the agreement for an arbitration. The chancellor overruled the defendants' demurrer, decreed that the State's lien was superior to any right they might have, if any, as lessees, and that they had no lien upon the property or its proceeds. From this decree they have appealed.

The statute authorizing the appointment of receivers for delinquent railroads, does not expressly confer upon them power to lease the roads in their charge, but it is insisted that such power existed by implication. It is well settled that a railroad company has not itself the power to lease its road and other property; that such a corporation owes duties to the public, the discharge of which it cannot, without express authority, relegate to another: *Thomas* v. *West Jersey R. R. Co.,* 10 Otto; *York, etc., R. R. Co.* v. *Winders,* 17 How., 30, and cases cited. If the company has no such implied power, it is difficult to see how the receiver, who temporarily assumes its functions, could possess it.

The statute states the purpose of the receiver's appointment to be to receive "the *rents,* issues, profits and dividends" of the road. It is insisted that this

impliedly authorizes him to lease.    But the same sec-
tion of the statute, in prescribing his duties when
appointed, says that he "shall continue in the posses-
sion of said road, fixtures and equipments, and run
the same and manage the entire road, until a sufficient
sum shall be realized, exclusive of the costs and ex-
penses of said proceedings, to pay off and discharge
the interest as aforesaid due on said bonds, which
being done, the receiver shall surrender said road and
fixtures and equipments to said company."    This com-
mand of the law, in effect, positively prohibits the
transmission of the possession or control to other hands,
and hence forbids a lease.    That comprehensiveness
rather than accuracy was aimed at, in the use of the
words "rents, issues, profits and dividends," is well
illustrated by the use of similar language in the answer
of the appellants, where they claim the right "to the
possession and control and management of said road
and to receive the *rents*, issues and profits thereof."

This court expressed the opinion in the case of
*McMinnville & Manchester Railroad Co.* v. *Huggins & Price,*
3 Baxt., 177, that Davenport, as receiver, had no power
to make the lease, and a further examination of the
question only convinces us that that opinion was correct.
The defendants do not claim to have paid rent except
for the time they remained in possession.    It is not
stated whether the money was paid to the receiver or
the State of Tennessee.    Inasmuch as it requires the
same power to ratify that it does to authorize in the
first instance, there is no department of the govern-
ment, except the Legislature, which could have ratified

it, and no act of that body is shown which it could plausibly be claimed amounts to a ratification. We are, therefore, of opinion that the contract. of lease between Davenport, receiver, and defendants, was null and void and conferred on them no rights whatever.

But the defendants insist, that if not entitled to compensation for loss of their lease, they have a right to compensation for the improvements put upon the road. Persons holding possession of real estate in good faith, under color of title, are entitled to have the value of their permanent improvements set off against the rents and profits which the plaintiff may recover: Code, sec. 3261. Whether the right exists in the absence of any attempt to collect rents, we need not now determine. Defendants are conclusively presumed to know the receiver's want of authority to. make the lease in question. They were in possession against the will of the company and despite its efforts, by legal proceedings, to dispossess them. The State is not responsible for the unauthorized act of its officers.

We think it can hardly be said that they were holding possession in good. faith under color of title. But it is conceded by defendants' counsel, as indeed it must be, that even if the lease were valid, it would be subject to the power of the State to determine the receivership, and thereby the lease, at pleasure. In this view of the case, the lessees were only tenants at will. But it has been often held that a tenant at will cannot recover for betterments. This court has gone even further, and held that a tenant for life has.

no such right: *Broyles* v. *Woodall*, 11 Heis., 39;
*Hughes* v. *Peters*, 1 Cold., 70, and cases cited. The
tenant voluntarily takes his chances of being permitted
to enjoy the expenditures he has made upon the land
of another.

The decree of the chancellor as to the questions
reserved in the decree of April 7, 1871, will be af-
firmed. The appellants will pay the costs of this
court, and the costs of the court below will be paid
as decreed by the chancellor.