## CHICAGO & NORTHWESTERN RAILWAY COMPANY *v.* CRANE.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF IOWA.

Submitted January 28, 1885.—Decided March 2, 1885.

The D. & M. Railroad Company, an Iowa Corporation, received from a township in Iowa, in consideration of its agreement to construct and maintain a railroad to a city in the township, the proceeds of a special tax and a conveyance of a large amount of swamp lands. It constructed the railroad, and, after operating it for a time, leased it to the C. & N. Railway Company, an Illinois corporation. The latter company changed the line and made it avoid the city, constructing a branch to the latter. A tax-payer and resident in the township, on behalf of himself and all other resident voters, tax-payers and property holders, commenced suit in a State court of Iowa against both companies, praying for a peremptory writ of mandamus to compel the reconstruction and operation of the old line. To this the defendants filed a joint demurrer, and a joint answer, setting out further matter in defence. On motion of the Illinois company the suit was removed to the Circuit Court of the United States, as a controversy wholly between it and citizens of Iowa, in which the Iowa company had no interest. Act of March 3, 1875, § 2, 18 Stat. 471. *Held*, That the Iowa corporation was a necessary party for the determination of the controversy, and the removal was improperly made.

An act authorizing a railroad company to lease its railroad to another corporation, and requiring the corporation lessee to be liable in the same manner as though the railway belonged to it, imposes a liability as to the leased property upon the company lessee while operating it; but does not discharge the company lessor from its corporate liabilities.

This was a suit begun in the Circuit Court of the State of Iowa for Polk County by the defendant in error, described in the petition as a resident, tax-payer and property-holder of Polk City, Madison Township in that county, suing for himself and all other resident voters, tax-payers and property-holders of that city and township. The defendants were the Des Moines and Minneapolis Railroad Company, a corporation organized and existing under the laws of Iowa, and the plaintiff in error, the Chicago and Northwestern Railway Company, a corporation organized and existing by virtue of the laws of Illinois, doing business and operating a railroad within the State of Iowa.

It was set out in the petition that the object of the Des Moines and Minneapolis Railroad Company was to construct and operate a line of railroad from the city of Des Moines, in Polk County, Iowa, to the State line in the direction of Minnesota; that prior to August, 1870, that corporation had surveyed and located the line of its road from the city of Des Moines, in Polk County, through said county *via* Polk City, in Madison Township, and was proceeding to construct the same; that, to aid it in the construction of its road as thus located, a special tax of three per cent. on the taxable property in Madison Township, under the existing assessment of said property, was voted to said company upon the condition that its railroad should be constructed and operated from the city of Des Moines, in Polk County, *via* Polk City, to Ames, in Story County; that the company did construct its railroad accordingly, and operated the same, making Polk City a station on its main and continuous line between said points, and thereupon the said tax was levied, collected and paid to the company in accordance with the vote, and amounted to about $17,000; that in 1874, Polk County, through its board of supervisors and according to law, conveyed to said company all the swamp lands of said county, amounting to about fifteen thousand acres, on the same condition, that the railroad should be constructed and operated from the city of Des Moines through Polk County *via* Polk City, and that said company accepted the grant; and that many citizens of Polk City and Madison Township subscribed and paid for stock in said company upon the same condition.

It was further alleged in the petition that said railroad was constructed and operated on the original line through Polk City, which was the largest and most important station on the railroad between Des Moines and Ames; that in the year 1879 the defendant, the Chicago and Northwestern Railway Company, leased the said line of railroad and came into possession of all the franchises and privileges of the Des Moines and Minnesota Railroad Company, and has changed the line and location of said railroad, and has built and is now operating its main line of road about two miles east of Polk City, on an entirely

different line from that upon which it was originally con-structed, and in violation of its obligations and duty, contrary to the terms and conditions upon which the said taxes were voted, the said swamp lands conveyed, and said stock sub-scriptions made, and to the damage and injury of the citizens and property-owners in Polk City.

The prayer of the petition was as follows :

" Wherefore plaintiff demands that defendants be required to reconstruct and operate the main line of said railroad upon the line originally constructed, running from the city of Des Moines, in Polk County, Iowa, north, *via* Polk City, to Ames, in Story County, Iowa, making Polk City a station on the said main and continuous line of railroad from the city of Des Moines, Iowa, to Ames, Iowa, and that the same be constructed and operated in full compliance with the terms and conditions upon which the taxes were voted and paid, swamp lands con-veyed, and subscriptions paid as aforesaid, and prays a per-emptory writ of mandamus, commanding the said defendants to forthwith comply with the above demands, and for such other remedy and relief as may be lawful and proper in the premises."

To this petition there was filed a joint demurrer, and also a joint answer, on June 8, 1883. In the answer, among other things, the following matter of defence was set out :

" And for further answer and defence to plaintiff's petition defendants say : About the year 1879 the Chicago and North-western Railway Company leased the Des Moines and Minne-apolis Railroad, then constructed and in operation from the city of Des Moines *via* Polk City to Ames, and thence north to Story City, in Story County, a distance of about (58) fifty-eight miles, and during the said year the Chicago and Northwestern Railway Company became the owner of all the stock, franchises, and privileges of the Des Moines and Minneapolis Railroad Company, and has ever since and now owns, holds, and controls the same, and operates said railway as a part of the system of the Chicago and Northwestern Railway Company.

" At the time of the construction of said railway and the acquisition of the same by the Chicago and Northwestern Rail-

way Company said railroad between Des Moines and Story City was a narrow-gauge road, and during the years 1880 and 1881 the defendant, the Chicago and Northwestern Railway Company, changed the gauge to a standard gauge, relaid the same with new steel rails and ties, making the same a first-class road.

"The narrow-gauge road was not a first-class road in any respect, very little grading having been done, and running mainly over the top of the ground, with the surface nearly in its natural and native condition, there being very few cuts and very few fills, and the road, as a whole, as it then existed, was of very little benefit to any towns along it or to the company which owned it, and the road was wholly unable to earn operating expenses and a reasonable interest upon its cost.

"The Chicago and Northwestern Railway Company extended the line from Story City to Jewell Junction, and thence north through Webster City, Eagle Grove, Algona, and to the State line north at Elmore, where the same connects with a through line, now controlled and operated by the Chicago and Northwestern Railway Company, known as the Chicago, Minneapolis, St. Paul and Omaha Railroad, thus making a through and continuous line, and very direct from the city of Des Moines to the cities of Minneapolis and St. Paul. The said road is built and constructed as a first-class road, with steel rails and easy gradients, and is capable of and is doing a large amount of through business and traffic.

"These defendants say that, with a view to making such a first-class road, it becomes absolutely essential and necessary to change the line so the same should run about two miles or two miles and a half east of Polk City, in order to avoid a very heavy grade of about 85 feet to the mile for three miles, going down into Polk City, and about the same distance and grade going out of it.

"The grade is not only very heavy, but the curves necessarily very great, and an engine capable of hauling 25 to 30 cars on the present line as constructed east of Polk City could only haul, at most, ten to twelve cars over the line *via* Polk City.

"In view of this condition of affairs and the impracticability

of operating the road through Polk City, the Chicago and Northwestern Railway Company, in the summer of 1880, made overtures to the people of Polk City to change the line to its present location.

" After many conferences and public meetings in the town of Polk City, the citizens of said town agreed with the Chicago and Northwestern Railway Company, that if said company would build a broad-gauge road from a point about two miles northeast of Polk City into the town, and change the location of their depot to a point more convenient for the citizens of Polk City to do business, both as to passengers and freight; to run two passenger trains from the main line to Polk City on their way from Des Moines to Ames, two mixed passenger and freight trains each day; move all freight promptly, with no greater charge for freight or passengers than if Polk City were on the main line; would also build and maintain good and sufficient stock yards in the vicinity of the depot in Polk City, to accommodate all shippers, &c.; would transport free all the material from Chicago, or any other point west of that place, to build a bridge over the Des Moines River; would pay the sum of $1,000 in money towards the building of said bridge, besides such transportation; and if the company would further perform, all and singular, the stipulations and agreements set out in a certain contract made between the citizens and tax-payers of Polk City and Polk County and the Chicago and Northwestern Railway Company, dated on the 2d day of September, 1880, as shown by a copy of said contract hereto annexed and made a part of this answer, then and in that case it should be lawful and proper for the defendants to change such line of railway and take up the narrow-gauge running into Polk City.

" Said contract was made and signed by thirty-five of the principal tax-payers and residents and business men of Polk City and Madison Township, as appears by the said copy annexed.

" In pursuance of the said contract the main line of the defendant's road was changed, as alleged in plaintiff's petition, at an expense to defendant of $15,000, and as herein admitted, and the narrow-gauge track, from a point about three miles

south of Polk City to a point about two miles northeast thereof, was then and there, during the year 1881, taken up and a broad-gauge built into said Polk City, as provided by said agreement, and from that time hitherto and, now, the defendant, the Chicago and Northwestern Railway, has operated a broad-gauge road into Polk City, in all respects in accordance with the contract herein referred to.

"And these defendants aver that said contract was made publicly, and the said plaintiff, Emanuel H. Crane, and all other citizens of Polk City and Madison Township and the county of Polk, in the State of Iowa, were each and all well acquainted and had knowledge of the said contract, and all that has been done thereunder, and acquiesced and consented thereto and therein.

"And defendants aver that the citizens of Polk City and of Madison Township and Polk County, acquiesced and made no objections to the taking up of said narrow-gauge track, and the laying down of the broad gauge, and the building of the new depot and stock-yards.

"And these defendants further say that by reason of the said contract, and in compliance with the conditions of the same by the Chicago and Northwestern Railway Company, the citizens, voters, and tax-payers of Madison Township and Polk City and Polk County, have been greatly benefited, and the town of Polk City placed upon a through line of railway, much more advantageous to them in all business respects than the narrow-gauge railway as built and located through their town.

"The defendants further state that the Chicago and Northwestern Railway Company has become and is the sole owner of the stock and road and franchises of the Des Moines and Minneapolis Railroad Company, and that the latter-named company has no longer any interest therein, and has no interest in the subject of litigation mentioned in the plaintiff's petition; that in case any relief can or may be granted to the plaintiff or any other person, the Chicago and Northwestern Railway Company will be solely liable to perform and execute any and all orders of the court in respect thereto, and that said Chicago and Northwestern Railway Company is entirely solvent, and able

to respond to any judgment or decree which may be rendered in behalf of the plaintiff in this suit.

"Wherefore defendants say that the plaintiff, the town of Polk City, and Madison Township, and the county of Polk, are each and all forever estopped, by reason of the matters hereinbefore stated, to claim or demand the relief prayed by the plaintiff, or any relief whatever, by reason of the change of the line of railways hereinbefore set forth."

On the same day, June 8, 1883, the Chicago and Northwestern Railway Company filed its petition for the removal of the cause to the Circuit Court of the United States. After setting out that the matter and amount in dispute, exclusive of costs, exceeded the sum or value of $500, and that the petitioner was a corporation and citizen of Illinois, the petition proceeded as follows:

"That your petitioner's co-defendant, the Des Moines and Minneapolis Railway Company, is merely a nominal party in this suit, for the reason that your petitioner is the owner of all the stock and franchises of the Des Moines and Minneapolis Railway Company, and is the lessee of said railway in perpetuity, charged with the duty of operating said railway, and subject to the payment of all claims or demands of every nature and kind made against said Des Moines and Minneapolis Railway Company, and your petitioner will be solely liable to obey any order made in this cause, and to perform any judgment rendered; that the controversy in this case is wholly between the plaintiff and the defendant, the Chicago and Northwestern Railway Company, who are citizens of different States, and which controversy can be fully determined as between them without the presence of the Des Moines and Minneapolis Railway Company; that your petitioner is the only defendant actually interested in such controversy; that the plaintiff, Emanuel H. Crane, was at and before the time of bringing this suit, and at all times since has been, and still is, a citizen of the State of Iowa and a resident thereof."

The accompanying bond was approved by the State court, and the petition for removal of the cause granted, and thereupon a motion to remand the cause, made in the Circuit Court

of the United States on October 30, 1883, was granted on May 24, 1884, and the cause remanded.

To reverse that order and judgment this writ of error was prosecuted.

*Mr. N. M. Hubbard* for plaintiff in error.—It is averred and shown in the answer that the Chicago and Northwestern Railway Company owned a connecting line and leased the Des Moines and Minneapolis road under and by virtue of the statute above quoted. The fact of the leasing of the road and transferring of all the franchises and possession to the Chicago and Northwestern Railway Company is alleged in plaintiff's petition as well as by defendants, and this shows that the Minneapolis company is unable to respond to a mandamus. High, Extraordinary Remedies, § 484; *Mitchell* v. *Speer*, 39 Geo. 56; *Dodd* v. *Miller*, 14 Ind. 433; *Rice* v. *Walker*, 44 Iowa, 458. The substantive ground of action for the plaintiff for his mandamus is, that the defendants are violating an implied contract to operate the narrow-gauge road, because Polk City and Madison township gave a three per cent. tax and the swamp land, on condition that the road should be built and operated through Polk City. But mere contract obligations cannot be enforced by mandamus. High, Extraordinary Remedies, § 321; *State* v. *Turnpike Co.*, 16 Ohio St. 308; *Queen* v. *Hull & Selby Railway Co.*, 6 Q. B. 70. At the common law, the mandamus proceeding was not an action proper, nor was it a writ of right, but a prerogative writ obtained on an information under oath showing good cause for its issuance. Under the Code of Iowa, however, mandamus is an ordinary action at law, triable as nearly as may be like an ordinary action for the recovery of damages, and is not triable *de novo* in the Supreme Court like an equitable action. *Dove* v. *Independent School District of Keokuk*, 41 Iowa, 689. The statute on this subject is, Code, § 3379: "The pleadings and other proceedings in any action in which a mandamus is claimed shall be the same in all respects as nearly as may be, and costs shall be recovered by either party, as in an ordinary action for the recovery of damages." The definition given of

an action of mandamus by our statute is contained in § 3373, as follows : " The action of mandamus is one brought in a court of competent jurisdiction, to obtain an order of such court commanding an inferior tribunal, board, corporation, or person, to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station."

*Mr. C. H. Gatch* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court. He recited the facts as above stated, and continued :

The right of removal from the State court, which is contested in this case, is founded on the last clause of the second section of the act of March 3, 1875, 18 Stat. 470, Richardson's Supplement, 173 : " And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district."

It is accordingly argued in its support that the sole and real controversy disclosed by the pleadings is between the plaintiff below and the plaintiff in error, to which the Des Moines and Minneapolis Railroad Company is a merely nominal party.

The action, it is said, is brought in pursuance of § 3373 of the Iowa Code, which is as follows :

" The action of mandamus is one brought in a court of competent jurisdiction to obtain an order of such court commanding an inferior tribunal, board, corporation or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust or station."

And by § 3379, it is further provided, that " the pleadings and other proceedings in any action in which a mandamus is claimed, shall be the same in all respects as nearly as may be, and costs shall be recovered by either party as in an ordinary action for the recovery of damages."

It is also declared, in § 3375, that "the plaintiff in any action, except those brought for the recovery of specific real or personal-property, may also, as an auxiliary relief, have an order of mandamus to compel the performance of a duty established in such action. But if such duty, the performance of which is sought to be compelled, is not one resulting from an office, trust or station, it must be one for the breach of which a legal right to damages is already complete at the commencement of the action, and must also be a duty of which a court of equity would enforce the performance."

The proposition that the Des Moines and Minneapolis Railroad Company is a merely nominal and not a real and substantial party to the controversy, is maintained on two grounds :

1. That the relief sought against it rests upon the force of the alleged agreements in reference to the location of its line, which constitute the conditions of the taxes voted, lands granted, and stock subscriptions paid to it, and that mandamus will not lie for the purpose of enforcing the specific performance of personal contracts. 2. And that the Des Moines and Minneapolis Railroad Company is not only exonerated but disabled from the performance of the duty sought to be enforced against it, if for such it were amenable to the process of mandamus, by virtue of the lease of its road, property and franchises to the plaintiff in error, that lease being authorized by § 1300 of the Code of Iowa, as follows :

"Any such corporation may sell or lease its railway property and franchises, or make joint running arrangements with any corporation owning or operating any connecting railway, and the corporation operating the railway of another shall, in all respects, be liable in the same manner and extent as though such railway belonged to it, subject to the laws of this State."

But to sustain the first point, it is necessary to decide the controversy in favor of the Des Moines and Minneapolis Railroad Company, one of the defendants sought to be charged, upon its merits. That necessarily affirms that such a controversy exists ; and that, in its turn, proves that the Circuit Court did not err in holding that it had no jurisdiction to entertain it.

It may be a question whether the remedy by mandamus is not larger and more extensive under the Iowa Code than the plaintiff in error admits. And, at any rate, we cannot strike from the record parts of the plaintiff's case as immaterial without assuming the point to be proved, that we have a right to consider its merits at all, for whether they are material may be the substance of the controversy. It may well be that the scope of the plaintiff's case includes the claim that the railway company, having, on the faith of the alleged agreements, made a location of its line, exhausted its corporate power in reference to its establishment; or that, even if it still had corporate discretion to change it, the circumstances alleged, including the agreements made on condition of its original location, may not have created a corporate duty enforceable by mandamus, to maintain and permanently operate it. These are questions, certainly, which the plaintiff in the action has the right to raise and have tried in any court of his own selection, having proper jurisdiction; and they raise a controversy with the Des Moines and Minneapolis Railroad Company, to which it is a necessary party, unless it is relieved from it by the substitution, in its place, of its lessee, by the law under which it transferred its property and franchises to the plaintiff in error.

But that section of the statute already quoted has no such effect. It does not discharge the lessor company from any of its corporate liabilities. It merely imposes a liability upon the lessee while operating it. And if this liability extends, as is claimed, to obligations of the lessor antecedent to the lease, such as that sought to be enforced in the present proceeding, there is nothing in the statute to exclude the idea that it is a joint liability, enforceable against both.

If it be said that the liability is that of the lessor, but that it is disabled by the lease from its performance, and that that duty is cast by the lease and the law upon the lessee, then the necessity for a joinder in the action is still more apparent. For to obtain a judgment against the plaintiff in error, requiring it to perform a duty devolved upon it merely because it has assumed under the law to perform the duties of another, makes it necessary, upon well-settled rules of pleading, also to obtain

a judgment against the latter to declare and determine with conclusive force the existence and limits of the duty to be enforced against its guarantor and substitute.

In any view we are justified in taking of the nature of the controversy disclosed by the pleadings in this proceeding, we conclude that both the original defendants are necessary parties to its determination, and that, consequently, the plaintiff in error was not entitled to remove the suit from the jurisdiction of the State court.

The judgment of the Circuit Court is accordingly

*Affirmed.*