WILLIARD v. SPARTANBURG, U. & C. R. CO. et al.

(Circuit Court, D. South Carolina. August 17, 1903.)

1. CORPORATIONS—DISSOLUTION—EFFECT OF SALE OF PROPERTY AND FRANCHISES.

A railroad company chartered by the Legislature of a state, whose charter has not been repealed, and which has not been dissolved by legal proceedings, exists as a legal entity, although all of its property, including its franchise to operate a railroad, has been sold under a valid mortgage, and it has ceased to hold meetings or to elect officers or directors.

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 2403, 2404, 2409; Railroads, vol. 41, Cent. Dig. § 642½.

**2. PARTIES—ACTION FOR INJURY TO SERVANT.**

A railroad company, whose property and franchises have been sold under a valid mortgage, and who has for years been out of possession, has no interest in an action by an employé of a lessee of the purchaser to recover for personal injuries sustained in the performance of his duties through the alleged negligent operation of the road by such lessee, and is neither a necessary nor a proper party.

**3. RAILROADS—INJURY TO LESSEE'S SERVANT—LIABILITY OF LESSOR.**

Assuming that a railroad company, so long as its corporate existence continues, cannot divest itself of the obligation to perform the duties to the general public imposed by its charter by any lease of its road, it stands in an entirely different relation toward employés of its lessee, and cannot be charged with liability for an injury to such an employé through the negligence of his employer in operating the road.

**4. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY.**

An action by an employé of a railroad company operating a railroad under a lease, against such company and its lessor, to recover for a personal injury alleged to have been due to the negligence of another employé of the same employer, presents a separable controversy, and the cause is removable by the lessee company, where it is a corporation of another state.

On Motion to Remand to State Court.

V. E. De Pass and Stanyarne Wilson, for plaintiff.

C. P. Sanders, for defendants.

SIMONTON, Circuit Judge. This action was originally brought in the court of common pleas of the state of South Carolina for Union county, some time in the year 1902, apparently in the month of August. The defendant the Southern Railway Company answered the complaint, and at the same time filed its petition, with bond, for removal into this court, upon the ground that it was the only real defendant in the suit; that the true controversy was with it; and that the plaintiff is a citizen and resident of the state of South Carolina, and it is a corporation of the state of Virginia. The cause having been removed into this court, it now comes up on a motion to remand. This motion presents issues of fact and of law upon the determination of which the result depends.

The plaintiff alleges that the Spartanburg, Union & Columbia Railroad Company, one of the defendants, was and is the owner of the railroad extending from Columbia to Spartanburg, in said state, and passing through the town of Union; that at the time hereinafter mentioned—the date of the cause of action—the Southern Railway Company, the other defendant, a corporation of the state of Virginia, was and is now a common carrier leasing and operating said line of railway together with the tracks, cars, locomotives, and other appurtenances thereto belonging; that the plaintiff was a brakeman of a switch engine train usually operated in or near the depot yards of the Spartanburg, Union & Columbia Railroad Company in the employ of the defendants (in the plural), and was injured on the 5th August, 1902, by reason of the negligence of the conductor of said

¶ 4. Separable controversy as ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.

train, said conductor being then and there the agent and representative of the defendants. He lays his damages at $15,000. The defendant the Southern Railway Company, in its answer, denies the existence of any such corporation as the Spartanburg, Union & Columbia Railroad Company, denies that it held or operated this road under a lease from that company, admits that plaintiff was in its employment at the date of this accident, and denies any liability therefor. At the hearing of this motion the following agreed statement of facts was submitted and used in argument:

"That several years prior to the 5th day of August, 1902, the Spartanburg, Union & Columbia Railroad Company·mortgaged its entire property, including its franchises, railroad tracks, roadbed, rights of way, depots, engines, cars, and rolling stock of every description to the Central Trust Company of New York, and that thereafter, but prior to the 5th of August, 1902, the said Spartanburg, Union & Columbia Railroad Company sold and conveyed all of its property, including its franchises, rights of way, roadbed and tracks, station houses, cars, engines, and rolling stock, to the Asheville & Spartanburg Railroad Company, which sale and conveyance was duly authorized by its stockholders; and that thereafter, and prior to the 5th day of August, 1902, the Asheville & Spartanburg Railroad Company consolidated with the South Carolina & Georgia Railroad Company, the Carolina Midland Railway Company, and the South Carolina & Georgia Extension Railroad Company, and on the ―― day of ――, 1902, leased such consolidated property, including the roadbed, track, station houses, switch tracks, cars, engines, and all rolling stock, belonging to such consolidated company, to the Southern Railway Company; and that prior to and on the 5th day of August, 1902, the Southern Railway Company, as lessee, was in the exclusive use, control, and operation of all of such property. It is further admitted that the Spartanburg, Union & Columbia Railroad Company has not been in the possession or control of any part of the tracks, roadbeds, switches, station houses, or of any of its cars, engines, or rolling stock since the sale and conveyance to the Asheville & Spartanburg Railroad Company, nor was it operating or was it controlling any of said tracks, roadbeds, switches, station houses, cars, or engines on the 5th day of August, 1902. It is further admitted that there has been no decree of court, or any legal winding up or dissolution of the Spartanburg, Union & Columbia Railroad Company, but that the organization of said company has not been preserved by annual meetings and elections of officers. It is further admitted that the plaintiff and the conductor, by whose alleged negligence the plaintiff is alleged to have been injured, were prior to and at the time of the alleged injury in the sole and exclusive employment of the Southern Railway Company, and that they were at work in the service of the said Southern Railway Company, and not in the service of the Spartanburg, Union & Columbia Railroad Company, at the time of such alleged injuries."

The solution of this case will depend upon these questions: First. Is the Spartanburg, Union & Columbia Railroad Company an existing corporation? Second. If it is, is it a necessary or proper party in this case having any interest in the issues involved therein? Third. If it has any interest in these issues, is that interest such that the controversy between it and the plaintiff is the same as that between the plaintiff and its codefendant the Southern Railway Company, or is the controversy between these two defendants separable?

The Spartanburg, Union & Columbia Railroad Company was incorporated by an act of the General Assembly of South Carolina. The act not only created the artificial being, the corporation, but it clothed it with certain franchises; among these, to operate its road as a common carrier of passengers and merchandise between its

termini, to lease its road, and to mortgage all its property, and to include therein its franchises. Pursuing its powers under its charter, this company did mortgage its entire property, including its franchises, and by a foreclosure in pais in satisfaction of the mortgage it conveyed all the property mortgaged to the Asheville & Spartanburg Railroad Company. This latter company consolidated with certain other companies, which consolidation was approved by the General Assembly of South Carolina. The Southern Railway Company, at the time of the accident complained of, under a lease from the consolidated companies, was in the exclusive possession and operation of the track theretofore of the Spartanburg, Union & Columbia Railroad Company, and the sole owners of the rolling stock thereon. The act incorporating the Spartanburg, Union & Columbia Railroad Company has not been repealed, nor has this corporation been legally dissolved. As a legal entity, it exists.

Under these circumstances is it a proper or necessary party to this suit, having any interest in the issues involved therein? The charter of this company gave to it the right to mortgage its entire property, including its franchises; that is to say, certainly its franchise to operate its road between its termini. This right to mortgage involved all the incidents of a mortgage; that is to say, the mortgagor gave, and the mortgagee took, not only the security of the mortgage, but also the right to enforce it by foreclosure and sale. To this right was essential the power under sale to give clear title to a purchaser. The railroad company exercised this power of mortgage. The mortgage was enforced and foreclosed. A sale was had thereunder, and all of the property of the Spartanburg, Union & Columbia Railroad Company; that is to say, its roadbed, side tracks, plant, and rolling stock ceased to belong to it, and passed to the purchaser, the Asheville & Spartanburg Railroad Company, long before this accident occurred. This Asheville & Spartanburg Railroad Company consolidated with others, and the consolidation leased to the Southern Railway Company. So at the date of this accident there was and could be no privity whatever between the Southern and the Spartanburg, Union & Columbia, no joint or other responsibility between them. The plaintiff was a brakeman on a shifting engine used in operating the road by the former company, operating it under a contract with that company, and none other. He had no contract with, owed no service to, the Spartanburg, Union & Columbia Railroad Company. The charter of that company, its mortgage thereunder, the sale under the mortgage, the consolidation of the companies, and the lease of the Southern are all matters of public record. The plaintiff himself knew with whom he contracted, and in bringing the Spartanburg, Union & Columbia Railroad Company into this controversy he had not a shadow of claim therefor.

Let us assume, however, for the purposes of this discussion, and in deference to the able argument of the counsel for the plaintiff, that by no act, either by way of lease or of mortgage, the Spartanburg, Union & Columbia Railroad Company could divest itself of the duties assumed by it when it accepted its charter, certainly so long as that charter remains unrepealed. "A railroad corporation

cannot escape the performance of any duty or obligation imposed by its charter or the general laws of the state by a voluntary surrender of its road into the hands of lessees." Washington, etc., R. R. Co. v. Brown, 17 Wall. 445, 21 L. Ed. 675. And even when, by law, it is authorized to lease its railway, so that however the lessee shall be liable to the same extent as the lessor, this will not discharge the lessor from any of its corporate liabilities. Chicago, etc., R. R. v. Crane, 113 U. S. 424, 5 Sup. Ct. 578, 28 L. Ed. 1064. And so it has been held that the public can hold the lessor company responsible for injuries resulting from defects in the roadbed, from insufficient plant, and in some states even from acts of negligence of the lessee. Natl. Bk. v. Railway Co., 25 S. C. 222; Harmon v. R. R. Co., 28 S. C. 401, 5 S. E. 835, 13 Am. St. Rep. 686; Parr v. R. R., 43 S. C. 197, 20 S. E. 1009, 49 Am. St. Rep. 826. But the present action is brought not by one of the public injured by the operation of the lessee railroad, but by an employé of the lessee, injured in the performance of his duty through the negligence of an employé of the lessee, and not from any structural defect in the road. The action is based on a tort quasi ex contractu, growing out of the contract of service and a breach of duty under that contract. There is no such contractual relation between the employé of the lessee with the lessor, and consequently no breach of duty upon which an action could arise. 2 Elliott on Railroads, § 472. In Nugent v. Boston, etc., R. R. Co., 80 Me. 62, 12 Atl. 797, 6 Am. St. Rep. 151, this subject is elaborately discussed, and the position of the text-writer sustained. So, also, in East Line, etc., Ry. Co. v. Culberson (Tex. Sup.) 10 S. W. 706, 3 L. R. A. 567, 13 Am. St. Rep. 807, the same subject is discussed, and the same conclusion is reached. In this case the court, among other things, says:

"It seems to us that the relation of the servant of the company operating the road to the owner is very different from his relation to his employer, and that the relation of the owner of the road to him is different from its relation to the general public. His contract is not with the company owning the road, and it may be asked does the latter owe him the duty of a master to his servant, or guaranty that the master with whom he has voluntarily contracted will perform its obligations to him? It may be that, if the injury had occurred by reason of a defect in the roadbed or track, and not by reason of a defect in the engine, the company charged with the duty of keeping the road would be liable. But, if it were true that the injury was caused entirely by another company operating the owner's road, and was inflicted upon one of its own employés by reason of a defect in machinery entirely under its control, it is difficult to see upon what principle of policy or justice the lessor should be liable merely because it owned the road."

The court also says:

"Where, in similar cases, a recovery has been permitted against a lessor, it has usually been allowed upon various considerations of public policy: First, because the franchises granted are in the nature of a personal trust, and sound policy demands, so far as the general public is concerned, that the corporation receiving the grant should be held responsible for the proper execution of the powers granted; second, for the reason that to deny the liability of the lessor would enable a railroad to shirk its responsibility, and to injure the public by placing its property under the control of irresponsive parties. And, third, because a person who had received an injury at the hands of the operating company, and was ignorant of the relations between that company and the owner of the road, might be at a loss to determine·

WILLIARD V. SPARTANBURG, U. & C. R. CO.

against which to bring his action, and thereby be placed at a disadvantage in seeking redress."

None of these apply to the case of a servant of a lessee who is injured through the neglect of his employer. He needs no protection as one of the general public, because he can enter the service or not, as he chooses. He is under no compulsion to take employment from an irresponsible company, and he certainly knows whom to sue for a wrong inflicted through his employer's neglect, for the latter is certainly liable to him in such case. The reason of the rule which holds the lessor liable fails in the case of an employé of the lessee, and we think that to follow it in a case like this would be to give it an arbitrary, and not a reasonable, application. The same question is discussed and the same conclusion is reached by the Circuit Court of Appeals of the Sixth Circuit (Taft and Lurton, Circuit Judges) in Hukill v. Maysville, etc., R. R. Co. (C. C.) 72 Fed. 752. The question, and the authorities bearing upon it, are elaborately discussed, and the distinction between the action of an employé of the operating company and that of one of the public is forcibly and clearly put. In its learned opinion the court uses this language:

"A person entering the employment of the lessee company acquired no right against the lessee except by virtue of the terms of employment. Such employé came into no privity of contract with the lessor company. No case has been cited to us in which it is held that the servant of the lessee company, even when operating under a void lease, can recover against the lessor company for injuries sustained by the negligence of the lessee company in the operation of the road."

The agreed statement of facts conclusively states that at the time of this accident the Spartanburg, Union & Columbia Railroad was, and for a long period had been, out of possession and control of the railroad, and that the Southern Railway Company was in exclusive possession and operation thereof, and that the plaintiff and the conductor, by whose negligence in charge of the train plaintiff was injured, were both at work in the service of the Southern Railway and not of the Spartanburg, Union & Columbia Railroad. Under these authorities no sort of liability accrued against the last-named railroad. The Southern Railway Company alone is liable.

Apart from all this, is there a separable controversy in this case? Judge Phillips, in Kelly v. Chicago, &c., Ry. Co. (C. C.) 122 Fed. 291, in a case in all respects like this, discusses this point, and holds the controversy separable. He says:

"The issues apparent on the face of the petition, in point of fact and law, are not identical as to these defendants. The one is not liable if there be no contract of lease or running arrangement, no matter what was the negligent act of the other, and the other would be liable for its negligent act, no matter if there be no such contractual relation between the two companies. The controversy, therefore, is separable."

He concludes that they were not joint tort feasors, and for this quotes Bliss on Code Pleading (3d Ed.) § 83:

"Persons are not jointly liable for a tort merely because they have some connection with it, even if it may give a several cause of action against them. There must be a co-operation in fact."

124 F.—51

And, quoting Pomeroy's Civil Procedure:

"There must be some community in the wrongdoing among the parties who are united as codefendants. The injury must be in some sense their joint work."

Taking the complaint and the admitted facts, no other conclusion can be drawn than that the tort charged here was committed by the agent of the Southern Railway, alone, upon another agent of the same company.

It is clear from all that has been said that the Spartanburg, Union & Columbia Railroad Company has no interest whatever in the issues in this case; that it is neither a necessary nor a proper party. This being so, and the Southern Railway Company, the only other defendant, being the only party against whom a cause of action is stated, and a citizen of the state of Virginia, had the right to remove the cause into this court. Wormley v. Wormley, 8 Wheat. 451, 5 L. Ed. 651; Wilson v. Oswego Township, 151 U. S. 64, 14 Sup. Ct. 259, 38 L. Ed. 70; Arrowsmith v. Nashville (C. C.) 57 Fed. 165; Thayer v. Life Association, 112 U. S. 717, 5 Sup. Ct. 355, 28 L. Ed. 864; Bacon v. Rives, 106 U. S. 99, 1 Sup. Ct. 3, 27 L. Ed. 69; Barney v. Latham, 103 U. S. 214, 26 L. Ed. 514. It is unnecessary to consider whether the Spartanburg, Union & Columbia Railroad Company is a sham party, or that its name was inserted to defeat the jurisdiction of this court—a proposition the court will not willingly entertain, and would be loath to believe.

The motion to remand the cause is refused.