## THE YORK AND MARYLAND LINE RAILROAD COMPANY, PLAINTIFF IN ERROR, *v.* ROSS WINANS.

A railroad company, organized under a charter from Pennsylvania, is responsible for the infraction of a patent right respecting cars, although the entire capital stock of the company was held by a connecting railroad company in Maryland, which latter company also worked the road by the instrumentality of its agents, and motive power, and cars.

The obligations to the community which the Pennsylvania company is placed under by its charter, cannot be evaded by any transfer of its rights and powers to another company; and in this case, the Pennsylvania company contributes to the expense of working the road, and of paying the officers and agents who are employed.

Courts will not allow corporations to escape from their proper responsibility, by means of any disguise.

Where the patent was signed by an acting commissioner of patents, it was not neces-
sary to aver or prove that he was legally entitled to act in that capacity. The court
will judicially take notice of the persons who preside over the patent-office, whether
they do so permanently or transiently.

THIS case was brought up, by writ of error, from the circuit
court of the United States for the eastern district of Pennsyl-
vania.

The case is stated in the opinion of the court.

It was argued by *Mr. J. Mason Campbell*, and *Mr. Johnson*,
for the plaintiff in error, and by *Mr. St. George T. Campbell*,
and *Mr. Latrobe*, for the defendant.

The points made by the counsel for the plaintiff in error, were
the following: —

The court below (Judge Kane) charged the jury, in substance,
that, as the infraction complained of was committed on the road
of the plaintiff in error, though the cars were owned by the Bal-
timore and Susquehanna Railroad Company, the plaintiff in
error was responsible in this action, because the profits accruing
from the use of the cars were divided between the two com-
panies.

He also charged the jury, that in estimating the amount of
damages, they were to be guided by the sum which had been
fixed by the witnesses as the fair compensation for an annual
license for each car, and were to allow such sum annually, for
each car, for a period of six years antecedently to the institution
of the suit.

The plaintiff in error will contend that the learned judge
below erred in both parts of his charge: —

1. As to the liability of the plaintiff in error. The cars, which
were assumed to be made in violation of the patent of the de-
fendant in error, were not built by, and did not belong to, the
plaintiff in error. It is not liable, therefore, for their construc-
tion, nor is it pretended that it has sold any. If liable at all, it
is for a use of the cars.

Now, in point of fact, it did not run the cars in question over
its road.

The whole transportation was done by the Baltimore and
Susquehanna Railroad Company; and if there has been any
user by the plaintiff in error of cars, in violation of the patent of
the defendant in error, it is a constructive user, growing out of
the agreement between it and the Baltimore and Susquehanna
Railroad Company, by which one third of the net revenue from
transportation is credited to it, and a user in fact, under that
agreement, by the Baltimore and Susquehanna Railroad Com-
pany.

This agreement is supposed, by the learned judge below, to do one of two things; either to constitute the relation of principal and agent between the two corporations, or to make them partners.

As to the first view, it may be observed, that the subject of the agency being the running of the cars, and the plaintiff in error having nothing to do with the running, it can hardly be deemed an agent, in the face of the fact that it does nothing in the agency. With still less plausibility can it be regarded as a principal; its supposed agent in that case, the Baltimore and Susquehanna Railroad Company, not only owning and running the obnoxious cars itself, but doing so by force of its own power in the premises.

As to the other view, to wit, that of a partnership between the plaintiff in error and the Baltimore and Susquehanna Railroad Company, a more extended examination is necessary.

In the first place, it seems impossible to establish this hypothesis, without conceding that these two corporations would have had a right to form a partnership expressly. Whether the partnership be express or implied, only relates to the nature of the evidence by which it is shown. The thing is the same, however proved. Now, the power to form a partnership is one which corporations do not possess, unless it be given in express terms, or by necessary implication. Sharon Canal Co. *v.* Fulton Bank, 7 Wend. 412; Canal Bridge *v.* Gordon, 1 Pick. 305.

There are neither such words nor implication in the present instance, and, of consequence, no partnership can be deduced where the power to create that relation is wanting.

If, however, the power be conceded, and no partnership has been in terms formed, it is only to be implied, in law, from the division of the net profits of transportation between the two corporations, provided for by their agreement.

But the reception of a part of the profits is not always attended with this consequence. Seamen and clerks may receive their pay in this form without becoming partners thereby, either *inter se* or as to third persons. So a landlord may get his rent in the shape of profits, and not be made a partner by such receipt. The test seems to be in the *animus* of the parties as to the reservation of profits, and not in the reservation itself. If their purpose be compensation, merely, to one furnishing something necessary to the business, a partnership is not held to be created. Such is the present case, where it is plain that the object was merely to compensate the plaintiff in error for the use of its road, and to make the rent therefor commensurate with the use. Story on Part. §§ 36, 38; 3 Kent's Comm. 33; Perrine *v.* Hankenson, 6 Halsted, 181; Heimstreet *v.* Howland, 5 Denio, 38;

Heckert *v.* Fegely, 6 Watts and Serg. 143; Boyer *v.* Anderson, 2 Leigh, 550; Loomis *v.* Marshall, 12 Conn. 69; Collyer on Part. § 44, and note.

Conceding, however, *argumenti gratiâ*, that the relation of principal and agent, or of partners, existed between the two corporations, it cannot be denied that the infringements complained of were not committed by the plaintiff in error, but by the Baltimore and Susquehanna Railroad Company.

Now, the tortious acts of the company last named cannot be considered as acts done in the ordinary course of the business between it and the plaintiff in error, whatever be the relation between these parties; and to make the plaintiff in error responsible, it must be shown to be privy to their commission, before or after. Story on Agency, § 455; Collyer on Part. § 457; Keplinger *v.* Young, 10 Wheat. 358, 363.

But the learned judge below excludes altogether this element of accountability, and makes the plaintiff in error liable, without putting the fact of privity to the jury.

2. The charge below is also erroneous as to the amount of damages recoverable.

It gave the jury to understand, that they could find against the plaintiff in error for a user of the patent of the defendant in error, for six years preceding the commencement of the suit.

But the declaration only charged (Record 4) a user during the term of seven years, for which the extension of the patent had been granted.

Now, the seven years' extension began only on the 1st October, 1848, and all, therefore, that was recoverable under the declaration, was for a user from the 1st October, 1848, to the time of suit brought, (April, 1851,) a period of less than three years, instead of six, as charged.

3. The suit being only for infringements committed during the extension of the patent, it is further submitted, that the extension being by the acting commissioner of patents, is unavailing to give the defendant in error any rights.

If this court, in 4 How. 646, meant to affirm the validity of the acts of such a functionary, as is supposed by Mr. Justice Woodbury, in 1 Woodbury and Minot, 248, this point is not now open; but if it be open, the plaintiff in error relies on the first and second sections of the patent act of 1846, as governing the patent-office, to the exclusion of the acts of 1792 and 1795. 1 Stat. at Large, 281, 415.

The counsel for the defendant in error made the following points : —

1. The extension of the patent by the acting commissioner, &c. (The argument upon this head is omitted.)

The remaining exceptions to the charge of the judge, were : —

1. " That the York and Maryland Line Railroad Company, and the Baltimore and Susquehanna Railroad Company, were two distinct companies as to third persons." The force of this exception is not clearly apprehended. If it is meant to convey the idea, that the judge should have charged, that the two companies were the same, and not "two distinct companies as to third persons," it is difficult to perceive, first, how it could have been sustained in point of law; or, second, how it would serve the defendants below. They were two corporations, had two charters, from different sovereignties, and had never been united by law. How could the judge say, then, that they were not two distinct companies ?

But if they were the same company as to third persons, the judge should (as this exception supposes) have so charged; and then the main point of defence, that the use by one was not the use by the other, would have utterly failed.

In fact, however, upon this point, all the judge said was, that if there were two tort feasors, a suit could be maintained against either, — for which proposition no authority is needed.

2. The second exception to the charge is : —

In charging, further, that, whether the relation between them was that of agency or partnership, the liability of defendants was the same.

As a legal proposition, standing singly, this can hardly be questioned.

One of two partners is liable to an action for an infringement, as for any other tort committed by his authority, or participated in by him. This was all the judge said. He was not asked to charge,

1. That two corporations cannot form a contract of copartnership.

2. Or, that, under the evidence in this cause, there was no proof of partnership.

3. Or, that there was no evidence of agency by which the defendants could be held liable.

Not being asked, he expressed no opinion on the point, but simply said, whether the relations were those of partners, or principal and agent, neither would affect the plaintiff's right. In this, there was, it is admitted, no error. If the defendant desired specific instructions, they should have been prayed.

The judge, by limiting his illustration to partnership or agency, actually favored the defendants; for he might have charged, that, under the facts, no matter by what name the relation of the companies was called, the defendants were liable, participating, as they did, in the tort. Grant that no copartnership contract can lawfully be made between two corporations ; yet, if they

did make it, shall they be allowed to allege its unlawfulness against a third party, whose property is tortiously used for their profit?

If they do make such a bargain, whether lawful or otherwise, and it result in a use by them of the patented improvement, the unlawfulness of the contract by which the use was accomplished can be no defence.

They are complained of for one unlawful act, and this would be to defend it by showing another.

If they participated in the use of the patented thing, no matter how, whether under a lawful or unlawful contract, they are liable. It is the doing of the thing, and not the mode in which it is done, that is complained of.

Without defining the relations of the parties, the defendants, upon this view, are clearly liable.

Whether the contract was lawful or unlawful, its effect was to make the act of one the act of the other; the use by one the use by the other.

If, however, the relation of the two companies is here to be considered, and its character, not made the subject of an express point in the court below, is to be argued, it will be contended, that such a use of the thing patented was proved as made the defendants liable, in any view that can be taken of the case.

1. Whether the use proved was to be regarded as a direct and independent use by the defendants below.

2. Or, as a use through their agents, (the Maryland company,) with their knowledge, by their authority, upon their property, and of which use they directly received a portion of the profits.

3. Or, as a use, as a partner, with the Maryland company, — paying a proportion of losses by, and receiving a proportion of the profits, as such, from, the use.

4. Or, whether contributing, as they did, their road, which was essential to the availability of the cars of the Susquehanna company, the defendants below were to be looked upon, as suggested by the judge's charge, as the agents of the former company.

1. There was evidence of a direct and independent use by the defendants below, to the prejudice of the patentee.

The defendants were a Pennsylvania company, fully organized, and having possession of their road.

The uses made of their road, were their own uses. The road and the cars upon it are a single machine, the use of a part of which involves the use of all other parts. The cars are useless without the road. The road is useless without the cars. The terms upon which the cars are permitted to be used are immaterial. The injury complained of is the use.

It is this which distinguishes this case from the case of Kep-

linger v. Young, in 10 Wheaton, 358. There Young was held not to be liable, because he only purchased the product of a machine; but it would have been different, had he taken the machine into his own keeping, and used it.

Indeed, in that case, the court intimate, that had the facts, from which it might fairly have been inferred that Young used the machine, been before them, the result might have been different.

2. Even if the fact of the ownership of the cars by the Maryland company is inconsistent with this view, yet the Maryland company using the defendants' road, only through their consent, can occupy no other position than that of agents, for whose acts, done in the course of their business, the principals must be responsible, especially as they are directly benefited by them.

The Pennsylvania company may, by law, run cars on their own road. The Maryland company has no right to do so, by law, within Pennsylvania. Their charter gives and can give no such authority, and such running would be a nuisance, if done by them in Pennsylvania, and could not be justified under their own charter. The Pennsylvania company, duly chartered, build a road; they need rolling stock, and the patented cars are used as such, and they receive one third of the net profits of the earnings thereof. Without this, the Maryland company could not use the Pennsylvania road; by it, they become, for a fluctuating compensation, the agents of the Pennsylvania company, to stock and run their road. If there can be no partnership, they enter Pennsylvania by virtue of this agency alone. A portion of the things done by them in the fulfilment of that agency, by the authority, with the sanction, and upon the property of the defendants, is to use the patented improvement. A proportion of the repairs upon it are charged to the principal; a portion of the profits from its use is paid to the principal. No authorities are needed to show, that, for an injury by an agent, the principal or the agent may be sued. The ownership of the infringing machine is immaterial; its use alone is in controversy; and it will be submitted, that such an use, by an agent, as is here proved, will render the principal liable.

3. Or, regarding the use as the result of a partnership, with the Maryland company, the defendants paying a proportion of losses and receiving a proportion of the profits, as such, from the use, the latter must be liable to the patentee.

Under this head, the second of the exceptions to the charge of the judge will be properly considered.

There was some relation between the companies, surely. What was it? If in fact, it be, that the Maryland company were simply using a Pennsylvania charter to carry on their business —

a change of name merely — the stock, property, and every thing being owned by the same parties, then, in Pennsylvania, the Maryland company's use was the Pennsylvania company's use.

The judge does not, however, define the character of this relation; he was not called upon to do so.

If it were needful, it might be well contended that the relation of the companies was that of partnership. Corporations may form partnerships under circumstances, so far, at least, as to preclude them from setting up separate rights to the prejudice of third persons.

In the case of Canal Bridge v. Gordon, 1 Pick. 297, which was a case where a bridge and an embankment leading to it were owned by different corporations, Parker, C. J., after referring to the technical difficulties of considering several corporations as copartners, goes on to say, what covers precisely the present controversy, " and yet, if they are all composed of the same individuals using several corporate powers for the same end and purpose, with nothing but the form of a record to distinguish them, equity would seem to require that they should not be allowed to sever to the prejudice of any person with whom either might contract."

And, for the same reason, where both are benefited by the wrong done by one of them, they should not be allowed to sever.

That contracts of the same nature are looked upon and treated as partnerships, will further appear by reference to the following authorities: 4 Law and Equity Reports, 171; 2 Law and Equity Reports, 319.

In the present case, there was every element required to form a partnership contract.

It is not the case where a portion of the gross receipts was used as a mode of calculating rent, as in 5 Denio, 68, cited by plaintiff in error, but a right to a share of the net profits, as such, which that case decides to be a criterion of partnership. Nor is it the case in 17 Wendell, 412, where it was held that two corporations cannot sue jointly, as corporations, in contract; but where it was not held that if, in fact, such copartnership existed, either could escape liability for a tort arising in that relation, by alleging its unlawfulness.

The law of New York, upon this question of partnership liability to third persons, is clearly settled in Bostwick v. Champion, 11 Wend. 571, where it was held that where A, B, and C run a line of coaches, the route being divided between them into sections, each furnishing his own horses and coaches, and hiring drivers, and paying the expenses of his own section, the fare, less the tolls, being divided in proportion to the number of miles

run, that a passenger injured by negligence of the drivers of A's coach, might sue them all.

The court is referred to the opinion of Judge Nelson, at page 584, and to same case, Chancellor Walworth's opinion, 18 Wendell, 175.

A division of profits, as profits, and a right to file a bill for an account, may be regarded as conclusive evidence of a copartnership contract.

Both, it is submitted, concur here.

The distinction, which it is believed will reconcile all the cases, is between a stipulation for a compensation proportioned to the profits, and one for an interest in such profits.

To this effect the cases are numerous. See Carey on Part. 9; Story on Part. 36; Bissett on Part. 4; Collyer on Part. 44, and the cases here cited.

Every element referred to by these authorities exists here.

If they may so contract as partners, it will be contended, that the evidence exhibits every feature required by law for that relation.

If not liable as joint tort feasors, or partners, from want of legal authority to make such a contract, or if the contract as made does not by law create this relation, still, the defendants are liable by reason of the use made of this road by the Susquehanna company.

Mr. Justice CAMPBELL delivered the opinion of the court.

The plaintiff is a corporation existing under a charter from the State of Pennsylvania, and authorized to construct a railroad from the town of York to the Maryland line. Its stock was subscribed for by the Baltimore and Susquehanna railroad company, a Maryland corporation, and their joint capital is vested in a continuous railroad from the city of Baltimore to York. The management of the road is committed to the Maryland company, which appoints the officers and agents upon it, and furnishes the rolling stock necessary for its operation. The president and secretary of the two companies are the same. The directors of the Pennsylvania corporation (plaintiff) are selected by the Maryland company, and are qualified by a transfer of one or more shares of its stock to them, shortly before an election, and which they return on vacating their office. This nominal organization is made necessary by the charter, which requires that the majority of the officers shall be citizens of Pennsylvania, and that annual reports of the condition and business of the company shall be rendered to the legislature. To preserve appearances with the legislature, an annual statement is made.

In this, the gross receipts of the entire road for the year are ascertained, and the expenses deducted; the balance is then divided, one third being assigned to the plaintiff; but no money passes between the corporations. In these expense accounts, the salaries of officers, conductors, and engineers, the cost of locomotives and fuel, of the repairs and insurance of cars, and the losses of business, enter as constituent items. It was admitted upon the trial of the cause, that a number of cars made according to the specification of the patent of the defendant, had been used upon the road without his license, and for which he brought this suit. A verdict was rendered in his favor, and the judgment thereon is brought to this court, upon exceptions to the instructions of the circuit court, to the jury.

The court charged the jury, that the road on which the infraction was committed was held under a Pennsylvania charter to the defendant in that court; that the transportation on the road was carried on by the Maryland corporation; and that the profits acruing from the use of the cars upon the road, that is, the profits of the infraction, are nominally divided between the two companies. That, upon these facts, the plaintiff is entitled to recover against the present defendants, whether they are to be regarded as partners, or as principal, or agent of the Maryland corporation.

The plaintiff complains here of this charge, for that the cars employed were not built by, and did not belong to the company; that they were the exclusive property of the Maryland corporation; and that the agreement to divide the profits did not constitute a partnership, nor evince a relation of principal or agent to impose a liability. This conclusion implies, that the duties imposed upon the plaintiff by the charter, are fulfilled by the construction of the road, and that by alienating its right to use, and its powers of control and supervision, it may avoid further responsibility. But those acts involve an overturn of the relations which the charter has arranged between the corporation and the community. Important franchises were conferred upon the corporation to enable it to provide the facilities to communication and intercouse, required for the public convenience. Corporate management and control over these were prescribed, and corporate responsibility for their insufficiency provided, as a remuneration to the community for their grant. The corporation cannot absolve itself from the performance of its obligations, without the consent of the legislature. Beman *v.* Rufford, 1 Simon, N. S. 550. Winch *v.* B. and L. Railway Company, 13 L. and E. 506.

If, then, the case had terminated with the facts that the infringement of the defendant's patent had taken place, by the

acts of persons using the corporate name of the plaintiff, with the assent of the corporate authorities, their liability would have been fixed.

But the case before us is, that the motive power on the road partly belongs to the plaintiff; that the agents and officers employed are in its service and are paid by it; and that the cars are fitted and repaired at the common expense of the two corporations. It follows, therefore, that the plaintiff is a principal, coöperating with another corporation, in the infliction of a wrong, and is directly responsible for the resulting damage.

Nor will the plea that the corporation has no independent nor responsible existence, as regards the Maryland company, and that its display of a president and directors, of conductors, engineers, and agents, of annual elections and annual statements, import only a formal and illusive representation before the legislature of Pennsylvania, or their constituents, of a compliance with the conditions of the charter, avail the plaintiff. It is certainly true that the law will strip a corporation or individual of every disguise, and enforce a responsibility according to the very right, in despite of their artifices. And it is equally certain that, in favor of the right, it will hold them to maintain the truth of the representations to which the public has trusted, and estop them from using their simulation as a covering or defence. Welland Canal Co. *v.* Hathaway, 8 Wend. 480.

The supreme court of Pennsylvania, in Peters *v.* Ryland, 8 Harris, 497, has announced principles decisive of this case.

The court held that the owner of a passenger car employed on a railroad belonging to the State, and the motive power and superintendence of which is furnished by the State, is responsible for the misconduct of the public agents. It says: "The case before them is *sui generis;* but it comes much nearer to that class of decisions in which it has been held, that several parties engaged in carrying over different portions of the same line of conveyance, each sharing in the profits of the whole route, and of course of each section of it, are all responsible for the faithful discharge of their duty, and liable to respond in damages for any injury which results from the negligence or unskilfulness of any of the proprietors and servants." 11 Wend. 571; 18 Ib. 175; 19 Ib. 534.

"The State, as well as the carrier, is paid for every passenger transported on this railroad, which shows their community of interest; and if there be a common liability, that of the State cannot be enforced by action; and this circumstance does not diminish that of the carrier; because they have a common interest, however, and share the business of transportation, it is apparent that in holding the party before us to answer for the

negligence of the State's agents, we do not punish one man for the misfeasance of another's servants."

The objection taken to the patent, that it is signed by " an acting commissioner of patents," and that the record contains no averment nor proof of his title to the office, is not tenable. The court will take notice judicially of the persons who from time to time preside over the patent office, whether permanently or transiently, and the production of their commission is not necessary to support their official acts. Wilson v. Rousseau, 4 How. 686.

The judgment of the circuit court is affirmed.

### Order.

This cause came on to be heard, on the transcript of the record, from the circuit court of the United States for the eastern district of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby, affirmed with costs, and interest until paid, at the same rate per annum that similar judgments bear in the State of Pennsylvania.