ALPHEUS S. BEAN *vs.* A. AND ST. L. R. R. COMPANY.

*Case. R. S., c. 51, § 32. Railroads.*

The defendant corporation is holden, under R. S. of 1857, c. 51, § 38, to make compensation for damage done by a fire communicated from an engine used upon their track by the Grand Trunk Railway Company, to whom the defendants leased their railroad.

The statute authorizing the lease expressly provides that nothing in such lease shall exonerate the defendants from any duty or liability imposed by their charter or any general law of the State; and the liability to make compensation to adjoining proprietors for damage done by fires so set to property along their route is one of these liabilities, from which they are not relieved. That liability was imposed by Public Laws of 1842, c. 150, upon the corporation using the engine, and the verbal change made in the revision and condensation of 1857 does not change the signification.

Under these statute provisions the use of the engine by the defendants' lessees must be deemed a use for which they are responsible, within the meaning of c. 51, § 38.

ON EXCEPTIONS.

CASE to recover for the destruction by fire, communicated from a locomotive engine used upon the defendants' track, of the plaintiff's store and contents situated in Bethel, near said track. The defence was, that the defendants were not using the locomotive which occasioned the injury, and they asked to have the jury told that, for that reason, they were not liable in this action, but this instruction was refused and a verdict rendered against them.

*D. Hammons,* for the plaintiff.

*J. & E. M. Rand,* for the defendants.

BARROWS, J.   The plaintiff's stock of goods situated in a store standing on a lot adjoining the line of the railroad owned by the defendant corporation was consumed March 25, 1868, by a fire which was communicated by a locomotive engine running on their road.   Yet the defendants say they are not liable for the loss because, they say, they were not using the engine.   It appears in testimony, that in March, 1868, and for a long time previous to the trial, the Grand Trunk Railway Company of Canada had been operating the defendants' railroad exclusively, and that their locomotives were running over the road when the plaintiff's goods were burnt.   The same state of facts existed when, in 1855, the case of *Stearns* v. *The A. & St. L. R. R. Co.*, 46 Maine, 95, arose.   The fire which caused the loss, in that case, was communicated from an engine bought and brought on to the line, and used, by the Grand Trunk Railway Company, and never in the possession of the defendants.   That case was argued in his usual thorough and elaborate manner, before the supreme court of this State, in 1858, by the late Hon. Phinehas Barnes, an able counsellor, who never failed in the faithful performance of all his duties, as well to the court as to his clients.

But the court, affirming the doctrine previously enunciated by them in the case of *Whitney* v. *A. & St. L. R. R. Co.*, '44 Maine, 362, held that these defendants could not relieve them-

selves from liabilities imposed upon them by the charter of their company, or the general laws of the State, by merely transferring their responsibilities to a foreign corporation, inasmuch as the act authorizing the defendants to make a lease of their railroad (Special Laws of 1853, c. 150, approved March 29, 1853) expressly provided in the first section that "nothing contained in this act or in any lease or contract that may be entered into under the authority of the same, shall exonerate the said company, or the stockholders thereof, from any duties or liabilities imposed upon them by the charter of said company, or by the general laws of the State." In substance they decided that the home corporation, which had received a grant of its franchise from the State, and had had the right of eminent domain exercised in its favor, must be primarily responsible for any injuries that might accrue to our own people from the exercise of the corporate privileges granted to these defendants, whether by themselves or by their lessees, and that the residents of this State, seeking redress for such injuries, should not be turned over to a foreign corporation, against whom the remedy by any process of our courts might be doubtful or imperfect. Accordingly, in Stearns's case, they held the Atlantic & St. Lawrence Railroad Company liable for the damages caused by a fire communicated from a locomotive belonging to and used by their lessees, the Grand Trunk Railway Company.

The defendants' counsel do not ask us to reverse that decision. They seek to distinguish this case from that, on two grounds. They say it does not appear here that there was any lease to the Grand Trunk Railway Company, nor how nor why they were operating the railroad of the defendants and using upon it the locomotive which set the fire. And they say that the phraseology of the statute creating the liability was changed in the revision of 1857, so that it rests now only upon the corporation using, instead of the corporation owning, the locomotive. The omission of the lease and the special act authorizing it does not better the defendants' position, for it would be a mockery of justice for the court to overlook matters so notorious and so much akin to public history, with

a tacit admission of the existence of which the whole trial at *nisi prius* must have proceeded. There is no question but that the Grand Trunk Railway Company were operating the road with the consent of the defendants. Why should we send the case to a new trial, merely in order that there may be formal proof of that touching which no question was raised, and which all parties must have been understood as conceding? The duty of the defendants' counsel to the court, as well as to the opposite party, required them to raise the question on the spot if they ever intended to rely upon it. *Lawrence* v. *Chase,* 54 Maine, 196; *Longfellow* v. *Longfellow,* Id. 240.

Has there been any actual change in the meaning of the statute creating the liability since the case of Stearns v. these defendants arose? We think not. We think the statute of 1842 meant precisely what that of 1857 says now more distinctly, and that the liability has always rested where it does now, upon the corporation using the locomotive, and not that the title to the locomotive was the test of liability. The provision in 1842 was as follows: "When any injury is done to a building or other property of any person or corporation by fire communicated by a locomotive engine of any railroad corporation, the said corporation shall be held responsible . . . and any railroad corporation shall have an insurable interest in the property for which it may be so held responsible in damages along its route," &c. The legislature doubtless intended to give the right to insure the property "along its route" to the party upon whom it imposed the responsibility, and contemplated the use of locomotives by railroad corporations upon their own routes, and when they spoke of "a locomotive engine of any railroad corporation" they were not thinking of the title to the engine, but of the use of it by the company, for that was what exposed the property along the route to destruction, and in that statute the "locomotive engine of any railroad company" was the locomotive engine possessed and used by such company, whoever owned it. Such language is often employed to denote the possession of one who has only a temporary usufruct in the article referred

to. When the condensation of 1857 reduced the provision above quoted to these briefer and more distinctly intelligible terms— "when a building or other property is injured by fire communicated by a locomotive engine, the corporation using it is responble for such injury, and it has an insurable interest in the property along the route," &c., no change was made in the significa- tion of the statute. It was still, as before, the company whose use of the locomotive had caused the damage, which was made responsible. The verbal change in the statute wrought no change in its meaning or application. The legislature never intended that the responsibility should rest upon the owner of a locomotive because of his ownership, nor unless the damage was caused by his use of it, nor to relieve the corporation that was using the engine which set the fire if they did not chance to own it. It was the possession and use of the engine which made it the engine of the corporation within the meaning of the Public Laws of 1842, c 9, § 5.

There has been no change in the law, then, since the case of *Stearns* v. *A. & St. L. R. R. Co.*, before cited.

These defendants, through their lessees, are still in a certain sense "using" their corporate privileges, their franchise, their track, and the rolling stock upon it, and deriving an income from the same. If they, directly or indirectly, by themselves or their lessees, or any one acting under their authority and by their permission, burn the property of adjoining proprietors, they are responsible, because of the special provision in the act authorizing the lease, declaring that they shall not be exonerated thereby "from any duties or liabilities imposed upon them by the charter of said company, or the general laws of the State." They must look to the covenants of the lessees in their lease for indemnity, for it was settled in Stearns's case that this is one of the liabilities from which they were not exonerated. It is not now an open question.

Whether they would be responsible also for injuries to passen- gers who contracted directly with their lessees is another and a different question. There would be room perhaps to argue that

the liability in such a case is not one imposed by the charter or the general laws of the State, but by the principles of the common law applied to the contract of the parties, and so dependent upon the contract as not to affect any but the parties immediately contracting. But the liability to adjoining proprietors for injuries inflicted is another matter. *Exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and VIRGIN, JJ., concurred.