ARROWSMITH v. NASHVILLE & D. R. CO. et al.

(Circuit Court, N. D. Tennessee. July 27, 1893.)

No. 2,929.

1. CARRIERS—WHO IS PASSENGER FOR HIRE—RAILWAY MAIL CLERK.
  A railway mail clerk, traveling upon a railway in the service of the United States, is a passenger for hire in so far as the railway company's liability for his injury is concerned.

2. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—PLEADINGS TAKEN AS TRUE.
  For the purpose of determining whether a controversy is separable so as to give one of several joint defendants the right of removal to a federal court, the allegations of the plaintiff's pleadings must be taken as true, and such defendants, on a joint cause of action in tort, cannot, by filing separate defenses, tendering distinct issues, render the suit separable for the purpose of removal.

3. SAME—PRIMA FACIE RIGHT OF REMOVAL—JOINDER OF FICTITIOUS DEFENDANT TO DEFEAT REMOVAL.
  In a petition for removal of a cause to a federal court a prima facie case requiring the state court to order the removal is made out by an averment that plaintiff originally sued the petitioning defendant alone, and on removal of that suit to a federal court voluntarily dismissed it, and at once brought this action in a state court upon the same cause of action, joining as a defendant a citizen of his own state, against whom

no cause of action existed, merely for the purpose of defeating petitioner's right of removal.

**4. SAME—PROCEEDINGS ON MOTION TO REMAND.**

After removal of such a cause, the circumstances of the joinder will raise an inference that it was made in order to defeat petitioner's right of removal, unless such purpose is denied; and if, on motion to remand, it appears from the pleadings as a matter of law that no cause of action exists against the resident defendant, the motion should be denied.

**5. RAILROAD COMPANIES—LEASE WITHOUT AUTHORITY OF LAW—NEGLIGENCE—LESSOR'S LIABILITY.**

A lease by a railway company of its line without authority of law is void, and the lessor continues liable for all the negligence of the lessee, the latter being treated as the lessor's agent operating the railway.

**6. SAME—INJURY TO PASSENGER—LESSOR'S LIABILITY.**

Where a railway company leases its line by authority of law, and there is no exemption of the lessor from future liability either by express terms of the statute or by the terms of the lease, it is nevertheless not liable for injuries to a passenger traveling under contract with the lessee, when such injuries are caused wholly by the lessee's negligence in operating the road. Railroad Co. v. Brown, 17 Wall. 445, distinguished.

**7. SAME.**

The N. & D. R. Co. leased its line, in good condition, to the L. & N. R. Co., by authority of Code Tenn. 1858, §§ 1122, 1123, permitting such leases, and providing that a lessee should hold a road so leased subject to the same liabilities as when it was in the hands of the lessor. The lease was silent as to liability for future negligence by the lessee. By permission of the lessee a mail crane was placed near the track, and thereafter a railway mail clerk, traveling under a contract between the United States and the lessee, was struck and injured by the crane, either because it stood too near the track, or because the lessee had allowed the track to get out of repair. *Held*, that there was no cause of action for such injury against the lessor.

At Law. Action brought in the circuit court of Giles county, Tenn., by Henry Arrowsmith, administrator of David S. Martin, against the Nashville & Decatur Railroad Company and the Louisville & Nashville Railroad Company, for negligence causing the death of plaintiff's intestate. The Louisville & Nashville Railroad Company removed the cause to this court. Heard on motion to remand. Denied.

John T. Allen and Flournoy Rivers, for plaintiff.

W. G. Hutcheson and Z. Ewing, for defendant Louisville & N. R. Co.

W. H. McCollum, for defendant Nashville & D. R. Co.

LURTON, Circuit Judge. This case is now heard upon a plea in abatement and a motion to remand to the state court, from which the case was removed on petition of the Louisville & Nashville Railroad Company. The Nashville & Decatur Railroad Company is a corporation created by the laws of the state of Tennessee. It owned and operated a line of railway extending from Nashville, in the state of Tennessee, to Decatur, in the state of Alabama. The Louisville & Nashville Railroad Company is a Kentucky corporation, whose original line extended from Louisville, in the state of Kentucky, to Nashville, in the state of Tennessee, where it connected

with the Nashville & Decatur Railroad. In 1871 this nonresident corporation leased the railway line of the Tennessee corporation, together with all its rolling stock of every kind, under a lease for 30 years; and since that time it has been in exclusive control and possession of the leased line, running and operating it as a part of its own line, and in its own name as lessor. In September, 1892, David S. Martin sustained injuries from which he died while traveling over that part of the leased line within the state of Alabama as a United States railway mail clerk, and having in his care and custody the United States mail. The plaintiff, as administrator upon the estate of said Martin, brought this suit under and by virtue of the Alabama and Tennessee statutes, giving and defining such actions against both the lessor and lessee corporations, to recover damages for the death of his intestate. For the purposes of this case, we shall treat the deceased as in all respects a passenger for hire. The Louisville & Nashville Railroad Company having contracted for the carriage of the United States mail over this leased line, contracted at the same time safely to carry the mail clerks having lawful custody thereof. The compensation for the carriage of such clerks must be regarded as included in the compensation paid by the government for the carriage of its mails. It is immaterial who pays the compensation for the carriage of such passenger. The legal relation of passenger and carrier must be taken to have existed at the time of his injury between the deceased and the Louisville & Nashville Railroad Company, with whom the contract for his carriage had been made by the government.

The declaration, in substance, charges that while being thus carried as a passenger for hire the deceased, in the discharge of his duty, was standing in the open door of the mail car, and was struck and violently thrown from it while passing the extended arm of a mail crane. This crane was a machine standing in close proximity to the passing train, and was placed there by the rai'road company, or by its consent, for the purpose of holding the mail pouch to be taken into the car by one of the clerks thereon as the train passed, without stopping. Plaintiff charges that the crane was placed too close to the passing train, and that the track of the defendant company opposite the crane was out of repair, the cross-ties being decayed, causing a "low-joint," which operated to cause the car as it passed to careen towards the side on which the crane was, thus bringing it into such proximity to the arm of the crane as to strike the deceased, standing in the door, as he was obliged to do to take the pouch from the crane. There is no allegation that this crane was so improperly placed by the Nashville & Decatur Railroad Company before its lease, or that at the time of the lease the track and roadway of the said Nashville & Decatur Rai'road was not in good repair. On the contrary, it satisfactorily appears that this machine was placed on the right of way by permission of the lessee company, long after it took possession, and that the "low joint" which operated to careen the car towards the crane did

not exist when the lease was made, but was a consequence resulting from decay of cross-ties occurring thereafter.

The petition of the Louisville & Nashville Railroad Company, upon which the state court directed the removal of the cause to this court, charges:

."That said Nashville & Decatur Railroad Company is neither a necessary nor a proper party defendant in this cause; that said Nashville & Decatur Railroad Company was made a party defendant in this cause with the sole and single purpose to prevent a removal by petitioner of this cause to the circuit court of the United States for the middle district of Tennessee, and thereby unlawfully to deprive petitioner of a right conferred upon it by the constitution and laws of the United States. Wherefore your petitioner states that in this suit, brought by plaintiff against it and the sham defendant, said Nashville & Decatur Railroad Company, there is a controversy which is wholly between citizens of the different states, and which can be fully determined as between them, to wit, a controversy between your said petitioner, who avers that it was at the commencement of this suit, and still is, a citizen of the state of Kentucky, and the said H. Arrowsmith, administrator of the estate of D. S. Martin, deceased, who, your petitioner avers, was at the commencement of this suit, and still is, a citizen of the state of Tennessee, in which state this suit was brought; and that both the said Arrowsmith, administrator of the estate of D. S. Martin, deceased, and your petitioner, are actually interested in said controversy."

To support this averment the petition further recites that the said plaintiff, Arrowsmith, administrator, on the 31st day of October, 1892, brought suit in the circuit court of Giles county, upon the same cause of action stated in the present suit, against the petitioner alone; that upon the filing of the declaration the Louisville & Nashville Railroad Company on the 5th day of December, 1892, filed its petition to have said cause removed to the circuit court of the United States for the middle district of Tennessee; that said application was granted, and a transcript of the record in said cause was filed in said United States court; that afterwards, on the 1st day of April, 1893, said Arrowsmith dismissed the said suit so begun in October, 1892, and thereafter, to wit, on the 4th day of April, 1893, instituted the present suit in the same state court, for the same cause of action, joining as a defendant the said Nashville & Decatur Railroad Company, a resident of the state of Tennessee. The petition further avers that at the time of said injury and now the said Louisville & Nashville Railroad Company was perfectly solvent; that it was at said time in sole and exclusive occupation of the railway built and owned by the Nashville & Decatur Railroad Company, and had been exclusively using and occupying said road for more than 20 years, and the said Nashville & Decatur Railroad Company ran no trains, carried no mails or passengers; that the lessee alone undertook the care and repair of the said leased line and exclusive control of said line by and through its own servants; and that, if any liability existed by reason of the injury sustained by the deceased, the responsibility rested in law and in fact upon the said lessor company.

To entitle the petitioner to a removal it must be made to appear that a separable controversy exists. "A controversy is not sepa-

rable when a defendant, who would otherwise be entitled to re-move the suit, is charged as jointly liable with another defendant who is a fellow citizen of the plaintiff." Fost. Fed. Pr. § 384. A separable controversy is not presented because the plaintiff has elected to sue two as jointly liable, when he might have sued either separately. If he states in his pleadings a cause of action which is joint, and elects to join as defendants all who are jointly liable, it is not for the defendants to complain that he need not do so. That ultimately it may turn out that one was not liable at all, and the other exclusively so, is a question on the merits, and does not affect the jurisdiction any more than that the final issue might be the nonliability of either or the liability of both. For the purpose of determining whether a controversy is separable, the allegations of the pleadings must be taken as true. Hyde v. Ruble, 104 U. S. 407; Ayres v. Wiswall, 112 U. S. 193, 5 Sup. Ct. Rep. 90; Plymouth Con. Gold Min. Co. v. Amador & S. Canal Co., 118 U. S. 264, 6 Sup. Ct. Rep. 1034; Railroad Co. v. Wangelin, 132 U. S. 599, 10 Sup. Ct. Rep. 203. Neither will the filing of separate defenses, tendering distinct issues by several defendants on a joint cause of action in tort, operate to divide the suit into separate controversies, so as to make it removable into the United States courts. Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. Rep. 1034, 1161; Railroad Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. Rep. 735.

That "a defendant has no right to say that an action shall be several, which a plaintiff elects to make joint," is practically conceded by counsel resisting the motion to remand. Their contention is this: That if, in point of fact, the plaintiff has no cause of action whatever against the resident defendant, and such defendant has been joined as a defendant with the sole purpose of defeating the right of the real defendant to remove the action against it to the circuit court of the United States, then such misjoinder operates as a legal fraud, and will not be permitted to deprive the nonresident defendant of its constitutional right of removal. The doctrine contended for was thus stated by Mr. Justice Miller:

"It would be a very dangerous doctrine—one utterly destructive of the right which a man has to go into the federal courts on account of his citizenship—if the plaintiff in the case, in instituting his suit, can, without any right or reason or just cause, join persons who have not the requisite citizenship, and thereby destroy the rights of parties in federal courts. We must therefore be astute not to permit devices to become successful which are used for the very purpose of destroying that right." Board of County Com'rs v. Kansas Pac. Ry. Co., 4 Dill. 277.

On the same subject, Judge Shiras, in Dow v. Bradstreet Co., said:

"The reasoning which sustains the doctrine, which is now too firmly established to be called in question, that in determining the jurisdiction of the circuit court of the United States regard will be had only to the citizenship of the real parties in interest, disregarding wholly all nominal or immaterial parties upon the record, seems to me to be equally applicable to cases wherein it is made to appear that a party, having in fact no interest in, or actual connection with, the subject of litigation, has been joined as a party with those actually interested, for the sole purpose of defeating the jurisdiction of the federal court. A fraud of this nature, if successful, deprives the citizen of a right conferred upon him by the constitution and laws of the

United States, and it certainly must be true that it cannot be perpetrated without a remedy existing for its correction. Unless this be so, then it is possible to defeat in every instance the right of removal, when the same depends upon the citizenship of the adversary parties, by the easy device of joining as a party one who has no interest in the case, but who is a citizen of the same state as the plaintiff." 46 Fed. Rep. 827.

The averments of the petition clearly make a case entitling the nonresident defendant to a removal. If the Nashville & Decatur Railroad Company has been joined for the purpose of defeating a removal only, and such purpose is made out, then this case should not be remanded. The facts which are relied on as establishing the averment that the Nashville & Decatur Railroad Company is a sham defendant are: (1) That the suit was originally instituted against the Louisville & Nashville Railroad Company alone; that when it was removed to the federal court the plaintiff voluntarily dismissed it, and at once sued again in the state court upon the same cause of action, joining in this second suit the Nashville & Decatur Railroad Company as a defendant. (2) That no cause of action exists against the local defendant thus joined.

These averments are made in the face of the petition for removal, and constitute such a prima facie case as to require the state court to make the order of removal. The question whether the Nashville & Decatur Railroad Company was or was not a sham defendant is a question to be determined by this court. Railroad Co. v. Daughtry, 138 U. S. 298, 11 Sup. Ct. Rep. 306.

The plea in abatement, and upon which the motion to remand is based, raises no issue of fact. It does deny that the sole purpose in joining the Nashville & Decatur Railroad Company was to deprive the Louisville & Nashville Railroad Company of its right of removal, and it does insist upon the legal liability of the lessor railway company for the torts of the lessee company in possession. The first denial affects only the inference drawn from the circumstances under which the joinder was made. The second relates to a question of law. If it be true that the plaintiff originally sued the Louisville & Nashville Railroad Company alone, and if it be true that, upon the removal of that suit to the United States circuit court, the plaintiff voluntarily dismissed his suit, and at once brought in the state court a second suit for the same cause of action against the Louisville & Nashville Railroad Company, and if he joined as defendant to the second suit a corporation of the state of Tennessee, against whom he has shown no case, then the averment that the Nashville & Decatur Railroad Company is a sham defendant is made out. The law can only infer that the purpose intended in joining the local defendant was the only one which such joinder was likely to accomplish, to wit, that it would deprive the only real defendant of its constitutional right to remove a suit against it to the courts of the United States, where local prejudice in favor of a resident suitor and as against a nonresident suitor would be less effective. The right to remove is a constitutional right; and, while this court should never seek to trench upon the jurisdiction of state courts, yet, on the other hand,

it cannot submit to see its jurisdiction defeated by so apparent a device as the joinder of a local defendant for the purpose of depriving the only real defendant of the right of removal.

Has the Nashville & Decatur Railroad Company incurred any liability to the plaintiff upon the facts stated in the plaintiff's declaration? If it is jointly or separably liable, then the motion to remand should be granted. If it is not liable, then the motion must be disallowed.

1. Where a railway company leases its line without authority of law such lease is void, and it will continue liable for all the negligence of the lessee affecting the public; the latter being treated as operating the road as a mere agent of the lessor. There is great unanimity of opinion in support of this proposition. The reasons for the rule, as generally stated are, substantially:

(a) That where the power to sell or lease is not expressly conferred upon a public corporation, it will not arise from implication. The enumeration of the powers of a public corporation implies the exclusion of all others not necessary to the reasonable enjoyment of those conferred.

(b) The selling or leasing of a railway line is an abdication of the public duties imposed upon such corporation by law, and it is contrary to public policy that such duties should be abandoned or imposed on another without legislative sanction. This principle was well stated, in a case involving the validity of a lease without express sanction of law, by Mr. Justice Miller, who said:

"There is another principle of equal importance and equally conclusive against this contract, which, if not coming exactly within the doctrine of ultra vires, as we have just discussed it, shows very clearly that the railroad company was without the power to make such contract. That principle is that, where a corporation, like a railroad corporation, has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions by which it undertakes, without the consent of the state, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the state, and is void as against public policy." Thomas v. Railroad Co., 101 U. S. 83.

Some of the principal cases supporting the general rule are: Railroad Co. v. Winans, 17 How. 30; Railroad Co. v. Brown, 17 Wall. 445; Frazier v. Railway Co., 88 Tenn. 138, 12 S. W. Rep. 537; Railway Co. v. Dunbar, 20 Ill. 623; Railroad Co. v. Morris, 68 Tex. 50, 3 S. W. Rep. 457; Railroad Co. v. Eckford, 71 Tex. 274, 8 S. W. Rep. 679; Railroad Co. v. Culberson, (Tex. Sup.) 10 S. W. Rep. 706; Railway Co. v. Lane, 79 Tex. 643, 15 S. W. Rep. 477, and 16 S. W. Rep. 18; Nelson v. Railroad Co., 26 Vt. 717; Railroad Co v. Chasteen, 88 Ala. 591, 7 South. Rep. 94; Ricketts v. Railway Co., 85 Ala. 601, 5 South. Rep. 353. "It cannot by its own act absolve itself from its public obligations without the consent of the legislature." Pierce, R. R. 283.

2. There was express statutory authority to support the leasing of the Nashville & Decatur Railroad by the Louisville & Nash-

ville Railroad Company from the legislatures of both the states of Tennessee and Alabama. Sections 1122 and 1123 of the Code of Tennessee of 1858, being sections 1249d and 1249e of the compilation of Milliken & Vertrees, are as follows:

"1122. A railroad company owning any main line may contract with any company owning a railroad connecting with such main line for the lease thereof.

"1123. The lessee shall hold such road subject to the liens and liabilities to which it was subject in the hands of the lessor and be bound for all payments for which the lessor was liable."

These sections originated with the act of 1857–58, c. 8. The act was in ambiguous language. The codifiers have simplified it, and carried it forward in plain, unequivocal language. The conflict, if any there be, between the acts passed during the session of 1857–58 and the Code enacted at the same session must be resolved in favor of the Code. Code, § 41. The effect of these sections is to permit connecting lines to be leased, and to impose upon the lessee company all liabilities in favor of the state or the general public imposed by the charter of the lessor company or the general law of the state. There is no provision expressly continuing the liability of the lessor company, nor is there any expressly exempting the lessor company for the omissions and negligences of the lessee company. The responsibility of the lessor company, after it shall have executed a lawful lease, and placed the lessee company in full possession, must depend upon the terms of the particular lease and upon the common law. The Alabama statute is equally explicit as to the power to make a lease, and is equally silent as to the future exemptions and liabilities of the lessor company. See Alabama Acts of 1868, pp. 470, 471. These statutory provisions authorizing the lease under which the Louisville & Nashville Railroad Company operated the line of road owned by the Nashville & Decatur Railroad Company make wholly inapplicable the line of cases above referred to, all of which were cases relating to leases without authority of law.

3. The contention of the plaintiff is that there must be not only legislative authority to make a lease, but that there must be also legislative exemption from further liability; that, unless the lessor be exempted by law, he will continue liable as to the public for all the negligent acts of the lessee. The learned counsel for the plaintiff have cited a very large number of cases as tending to support this proposition. Many of them are cases arising upon licenses or leases, where neither was sanctioned by the charter of the contracting companies or authorized by the legislature. In the case of Hanna v. Railway Co., 88 Tenn. 313, 12 S. W. Rep. 718, the only question was as to the liability of a railroad company for an injury sustained by one employe of a cross-tie contractor through the negligence of a coemploye while engaged in moving some empty cars by permission of the company. The company was held not liable. The observation of Mr. Justice Folkes as to the necessity of both "sanction and exemption" to authorize the operation of a

railroad by permission of the owner was a mere passing remark, and uncalled for by any question before the court. The question for decision is res integra in Tennessee. The same may be said as to Alabama, the state within which plaintiff's intestate sustained the injury from which he died. The cases cited by counsel are Ricketts v. Railway Co., 85 Ala. 601, 5 South. Rep. 353, and Railroad Co. v. Chasteen, 88 Ala. 591, 7 South. Rep. 94. Neither is in point. In the Ricketts Case the defense was that its road had been sold, and was at the time of the injury in the exclusive occupation of the purchaser. The sale was without authority of law, and the Alabama court held that it was therefore void, and the purchaser should be treated as the mere agent for the owner. The latter presented a question as to whether the company, or a contractor engaged in building the company's road, was liable for an injury sustained by a brakeman on a train operated by the contractors. What the Alabama court decided in each case was this:

"A railroad company does not avoid responsibility for an injury caused by the negligence of the agents or servants of another corporation, or of a natural person, to whom it may lease or voluntarily surrender its franchise without competent authority." 88 Ala. 591, 7 South. Rep. 94.

The following cases were all cases where the lease was wholly unauthorized by law: Thomas v. Railroad Co., 101 U. S. 71; Railroad Co. v. Morris, 68 Tex. 50, 3 S. W. Rep. 457; Railroad Co. v. Kuehn, 70 Tex. 582, 8 S. W. Rep. 484; Railroad Co. v. Eckford, 71 Tex. 274, 8 S. W. Rep. 679; Railway Co. v. Dunbar, 20 Ill. 623; Ricketts v. Railway Co., 33 W. Va. 433, 10 S. E. Rep. 801.

The next class are cases construing local statutes requiring railroad companies to fence their roads, which were held applicable to the companies owning the road. Fontaine v. Railroad Co., 54 Cal. 645; Whitney v. Railroad Co., 44 Me. 362. The unfenced road was a nuisance under the statute, and the cases might well be rested upon the principle affecting landlord and tenant,—that each is liable; the one for creating, and the other for continuing, a nuisance. Tayl. Landl. & Ten. § 175; Swords v. Edgar, 59 N. Y. 28. In Railroad v. Hambleton, 40 Ohio St. 496, both the lessor and lessee companies were held liable for an unlawful change of grade in the streets of a city, which was made before the lease, and continued thereafter by the lessee. The case was rested upon the rule affecting a landlord who lets premises on which is maintained a nuisance which is continued by the lessee. In the case of Railway Co. v. Curl, 28 Kan. 622, the opinion was by Brewer, J. The lessor company had failed to fence in its railway track as required by the Kansas statute. In that condition the road was by legislative authority leased to another railroad corporation. The plaintiff sued for damages resulting to him by reason of the unfenced condition of the track, and brought his suit against the lessor company. The contention of the defendant company was that where the statute authorized the lease of one company to another of its track the lessor was not liable for injuries caused by the torts of the lessee company. Brewer, J., in answer to this argument, said:

"To a certain extent this proposition is true. If the injury results from negligence in the handling of trains or in the omission of any statutory duty connected with the management of the road,—matters in respect to which the lessor company could, in the nature of things, have no control,—then the lessee company will alone be responsible; but when the injury results from the omission of some duty, which the lessor itself owes to the public in the first instance,—something connected with the building of the road,—then we think the company assuming the franchises cannot divest itself of responsibility by leasing its track to some other company. * * * The injury resulted directly from its own wrong, and not from any mere negligence on the part of the lessor company. It cannot release itself by contracting with some other party to discharge its statutory duties. The defendant omitted this duty, and by the statute it is responsible for all damages sustained by reason of such omission."

See, also, Railroad Co. v. Wood, 24 Kan. 619.

Others are cases depending upon statutes making every railway company liable for fire upon adjacent property, caused by sparks from engines running upon the road. Ingersoll v. Railroad Co., 8 Allen, 438; Davis v. Railroad Co., 121 Mass. 134; Bean v. Railroad Co., 63 Me. 295; Balsley v. Railroad Co., 119 Ill. 68, 8 N. E. Rep. 859; Railway Co. v. Campbell, 86 Ill. 443. In the case of Bean v. Railroad Co. the action was against the lessor company by an adjoining proprietor whose property had been destroyed by fire communicated from the engines used by the lessee company. The lessor corporation was held liable on the ground that the lease was authorized by statute, which provided "that nothing in the act, or in any lease or contract that may be entered into under the authority of the same, shall exonerate the said company from duties or liabilities imposed upon them by the charter of the company or the general laws of the state." The court held that under the general laws of the state the lessor company was responsible for fires thus communicated. The court concludes by saying:

"Whether they would have been responsible also for injuries to passengers who contracted directly with their lessees is another and a different question. There would be room, perhaps, to argue that the liability in such case is not one imposed by the charter or the general laws of the state, but by the principles of the common law applied to the contract of the parties, and so dependent upon the contract as not to affect any but the parties immediately contracting. But the liability to adjoining proprietors for injuries inflicted is another matter."

In the case of Mahoney v. Railroad Co., 63 Me. 68, the defendant was held not liable for injuries sustained by a passenger as the result of the misconduct and wrong of a conductor and other servants upon the train of the lessee. The court held that liability for injuries of that class was not imposed by the charter or the general law of the state, but sprang out of the contract between the plaintiff and the railroad company, whose passenger he was. This case will be again referred to. Plaintiff also cites and relies upon Questead v. Railway Co., 127 Mass. 204. That case was this: The horse-railway company leased its line of railway under a statute which authorized it to lease its road and franchises to any responsible party for the operation of the road, but provided that "such lease or contract shall not release or exempt such company

from any duties, liabilities, or restrictions to which it would otherwise be subject." The court held that the effect of this provision was that the defendant had the same liability to compensate persons injured during the management of the road, while the lease was in force, as it would have had if the corporation had been managing its own road. The case turned wholly upon the construction of the statute authorizing the lease.

Counsel also cite the following cases from the United States supreme court: Railroad Co. v. Barron, 5 Wall. 90; Thomas v. Railroad Co., 101 U. S. 71; Railroad Co. v. Winans, 17 How. 31; Railway Co. v. Crane, 113 U. S. 424, 5 Sup. Ct. Rep. 578; Railroad Co. v. Brown, 17 Wall. 445. None of the decisions are in point. The Winans Case turned upon the identity of interest between the two companies, and want of legislative authority to turn over the management of the road to another company. The court said: "The corporation cannot absolve itself from the performance of its obligations without the consent of the legislature." 17 How. 39. Thomas v. Railroad Co. was a lease wholly without authority of law. Railway Co. v. Crane, 113 U. S. 424, 5 Sup. Ct. Rep. 578, presented a case of contract between a township and a railway company by which the company agreed to build and maintain a railway to a city within the township. It constructed the line according to agreement, and then leased the road to another company, which changed the line so as to avoid the town. The lessor company was the contracting company, and the court held it to be a necessary party to a suit by the township against the lessee company to compel a reconstruction of the line. Railroad Co. v. Brown, 17 Wall. 446, was this: A railroad operated on the joint account of a receiver of a part of it and the lessee of the remaining part was held liable for the unlawful ejection of a passenger by a servant of the parties working it. It did not appear that the lease had been made by authority of law, and it appeared that the road was operated by consent of the owner of the road in the name of the company owning it, the plaintiff holding a ticket contract with the lessor company. The question of the effect of a legislative authority to make a lease upon the liability of the lessor to a passenger by contract with the lessee was not involved and not discussed. In the opinion the decision was mainly rested upon the proposition that the ticket on which the plaintiff was riding was issued in the name of the lessor company. On this point the court said:

"The holder of such a ticket contracts for carriage with the company, not with the lessees and receiver. Indeed, there is nothing to show that Catherine Brown knew of the difficulties into which the original company had fallen, nor of the part performed by the lessees and receiver in operating the road. She was not required to look beyond the ticket, which conveyed the information that this road was run, as railroads generally are, by a chartered company. Besides, the company, having permitted the lessees and receiver to conduct the business of the road in this particular, as if there were no change of possession, is not in a position to raise any question as to its liability for their acts."

The Barron Case was one of joint use by two companies, the permissive use being without express authority of law.

The cases of Singleton v. Railroad Co., 70 Ga. 464; Harmon v. Railroad Co., 28 S. C. 401, 5 S. E. Rep. 835; Hart v. Railroad Co., 33 S. C. 427, 12 S. E. Rep. 9,—are cases laying down in very unguarded terms the doctrine that, without both sanction and exemption, the lessor continues liable for both the torts and contracts of the lessee company. This doctrine, in this undiscriminating form, seems to have its origin in the Georgia case cited above. The plaintiff was a passenger, and was unlawfully ejected from a train operated by the lessee of the defendant company. The lessee was in exclusive possession under a lease authorized by legislative consent, but the lessee operated the road in the name of the lessor company, and the ticket upon which the plaintiff was riding was issued in the name of the lessor company. The court quote and adopt with approval the language of Mr. Justice Davis in Railroad Co. v. Brown, supra, as to the effect of the conduct of business, after the lease, in the name of the lessor. It is true that the learned judge who wrote the opinion in the Georgia case does say, as to the effect of a lease authorized by law, "that the original obligation can only be discharged by a legislative enactment consenting to and authorizing the lease, with an exemption granted to the lessor company." For this he cites Redfield and Pierce on Railroads, and Railroad Co. v. Dunbar, 20 Ill. 627. This Illinois case did not involve the question at all. It was a lease without authority of law. Railroad Co. v. Brown, 17 Wall., is also referred to. This does not bear upon this aspect of the opinion, as has already been shown in a former part of this opinion. Mr. Redfield, in speaking of the want of power in a railway company to lease out its road without legislative consent, says:

"But even where such contracts have been made by permission of the legislature, it has been held in this country that the company leasing itself does not thereby escape all responsibility to the public; but that the public generally may still look to the original company as to all its obligations and duties which grow out of its relation to the public, and are created by charter and the general laws of the state, and are independent of contract and privity between the party injured and the railway. But the party in possession of a railway, whether a lessee or trustee under a mortgage, is primarily liable for all injuries and defaults." 1 Redf. R. R. p. 618.

It will be noticed that this author speaks in very guarded terms, and confines his statements to the effect of such lease on the rights of the public, which rights spring from the charter or from the general laws of the state. The case he cites is that of Nelson v. Railway Co., 26 Vt. 717. The opinion in that case was by Judge Redfield, and the question as to the effect of legislative consent to the lease was not made or decided. In the fifth edition of his work on the Law of Railways, he notices this fact in a note to the text quoted above. See 1 Redf. R. R. p. 618, note.

The text of Pierce on Railroads is as follows:

"The company cannot, in the absence of special statute, authority, and exemption, divest itself of responsibility for the torts of persons operating its

road by transferring its corporate powers, or leasing the road to them. It cannot by its own act absolve itself from its public obligations without the consent of the legislature. It is liable for injuries to its passengers caused by the negligence of another company which it allows to use its road."

"The lease of a railroad under due authority of law effects a transfer of rights and liabilities in its management, so that the corporation owning the railroad is discharged from responsibility for the lessee's torts; but the corporation will remain liable if it continues, notwithstanding its lease, to operate the railroad, or allows it to be operated in its corporate name, or fails to require other companies using the track to take proper precautions, where it has the power to require them. Lessees who permit another company under contract to use the road are liable for its torts. Statutes imposing police and other duties and liabilities on railroad companies are usually construed to apply to companies and persons who are in possession and under contracts with, or by permission of, the company owning the railroad."

"The lessees of a railroad are presumed, by virtue of a lease duly authorized by law, to succeed to the powers and obligations of the lessor corporation, and are therefore liable for the torts of their servants in its management. They cannot, it has been held, set up in defense the illegality of the lease. Some statutes make the lessor company liable for the negligence of the lessee's servants in the working of the road."

"Statutes which, for the public security, make certain conditions in the construction and use of the railroad, are sometimes held to affect both the corporation owning the road and other parties using the road by its permission under a lease or contract authorized by law. Thus, if the duty to fence is prescribed, and in consequence of an omission of the duty cattle are killed by the trains of the company which uses the road under lease or contract, such company, and also the company owning the railroad, are both liable; the former for using the road, and the latter for permitting its use in a defective condition. But some statutes are construed to impose liability resulting from the omission of the legal duty only on the company, whether lessor or lessee, which inflicted the injury. The lessee by whose act cattle were killed was held not relieved from liability under a statute by the fact that, by the terms of the lease, his trains were to be operated in subordination to time-tables fixed by the lessor, and that the latter was to keep up repairs and fences." Pierce, R. R. pp. 283-285.

The first part of this paragraph, to the effect that a company "cannot, in the absence of special statute, authority, and exemption, divest itself of responsibility for the torts of persons operating its road by transferring its corporate powers, or leasing the road to them," is likely to mislead by the presence of the word "exemption." The cases he cites are all cases where the lease was wholly unauthorized, or cases where the effect of a legislative sanction was not discussed. The learned text writer makes plain that he is not to be understood as discussing in that paragraph the effect of a lease silent as to the lessor's exemption; for he immediately follows it with the statement that, where the lease is authorized by law, "a transfer of rights and liabilities in the management" is effected, "and the lessor discharged from responsibility for the lessee's torts." Id. 283.

This Georgia case has been quoted frequently, as well as the Vermont case, as authority for the view contended for by plaintiff.

Where obligations are imposed by charter or statute law upon a railroad company for the protection and advantage of the general public not having contract relation with it, it may very well be said that a general authority to lease out its road, which contains no provision exempting it from such public obligations, will not

absolve it from liability. So, if a railway be in such condition that it is a nuisance when leased out by reason of the absence of something necessary to its safe operation, or the presence of something dangerous to its safe operation, and this nuisance be continued by the lessee, both the lessor and lessee would be liable,—the one as having created, and the other as having continued, a nuisance. But to say that, after the lessor has by authority of law transferred the control and management of its road to another, he shall, unless specially exempted, remain liable for all the torts and contracts of the lessee, is to ignore the contract of lease and the legislative sanction under which it was made. The state, on grounds of public policy, may well refuse its consent to the transfer; but, if it consent, then there is no public policy to authorize the courts to say that the responsibility for the future management and operation of the road has not been exclusively imposed upon the lessee as the lawful substitute for the company owning the road.

In the case at bar there is no privity between the plaintiff and the Nashville & Decatur Railroad Company. His intestate was a passenger for hire by virtue of the contract between the Louisville & Nashville Railroad Company and the government. The Louisville & Nashville Railroad Company was in exclusive control and possession of the railway. The Nashville & Decatur Railroad Company had no right to enter upon and repair the leased track. It had no right to interfere with the location of the mail crane. The track was not a nuisance when leased. If it had become so, it was the fault of the company alone authorized to repair it and to prevent the placing of the crane in too close proximity to the track. With respect to the future management and operation of this road the state had consented that, from and after its lease, the lessee should stand as the substitute for the owner in regard to all those rights and liabilities which should spring out of the future management and operation of the leased road. The duty to carry the plaintiff's intestate with the highest degree of care and skill did not rest upon any charter requirement, or spring from any general statutory law of the state. The duty was imposed by operation of common law upon the contract of carriage. The right to maintain this action arises from the contract relation of carrier and passenger. If intestate had been carried safely, there would be no right of action by reason alone of the defective condition of the road. The duty to keep the road in repair is like the duty to furnish a safe vehicle. Each arises from the relation of carrier and passenger. Each is imposed upon the lessee company by necessary legal effect of the assumption of the carrier duty. These principles seem to have the support of the most satisfactory authorities. Mr. Wood thus sums up the rule, as deduced by him from the cases:

"But where the statute authorizes the lease the lessee assumes, during the existence of the lease, all the duties and obligations of the lessor, and from the time that it enters into possession of the road becomes solely liable

for all injuries resulting from its management, unless it is operating the road in the name of the lessor." Wood, Ry. Law, § 490.

This principle has the express sanction of the court of appeals of the state of New York in two well-reasoned cases: Ditchett v. Railroad Co., 67 N. Y. 425; Miller v. Railroad Co., 125 N. Y. 118, 26 N. E. Rep. 35. The distinction between public duties imposed by law and the right of one injured through the negligence of the lessee is recognized by the courts of Maine. Mahoney v. Railroad Co., 63 Me. 69. In Nugent v. Railroad Co., 80 Me. 62, 12 Atl. Rep. 797, the court fully discussed this distinction, saying:

"And herein, as we think, lies the true distinction which marks the dividing line of the lessor's responsibility. In other words, an authorized lease, without any exemption clause, absolves the lessor from the torts of the lessee resulting from the negligent operation and handling of its trains and the general management of the leased road, over which the lessor could have no control. But from an injury resulting from the negligent omission of some duty owed to the public, such as the proper construction of its road, station houses, etc., the charter company cannot, in the absence of statutory exemption, discharge itself of legal responsibility. Railroad Co. v. Curl, 28 Kan. 622, 11 Amer. & Eng. R. Cas. 458."

The distinction was pointed out very clearly by Judge Brewer in Railroad Co. v. Curl, 28 Kan. 622. To the same effect is Briscoe v. Railway Co., 40 Fed. Rep. 274. See, also, Railway Co. v. Washington, (Va.) 10 S. E. Rep. 927, 43 Amer. & Eng. R. Cas. 688.

The conclusion is that the Nashville & Decatur Railroad Company is not liable, and the circumstances under which it was joined as a defendant are such as to make it the duty of this court to hold that it was made a defendant solely for the purpose of depriving the only real defendant of its right of removal.

The motion to remand will therefore be overruled.